Commonwealth *v.* Waddy, Appellant.

Argued January 13, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY and MANDERINO, JJ.

*Walter T. Darmopray,* with him *Dennis E. Haggerty,* for appellant.

*Judith Dean,* Assistant District Attorney, with her *Milton M. Stein,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, April 20, 1972:

Appellant pleaded guilty to murder generally and was adjudged guilty of murder in the first degree in accordance with the Pennsylvania Felony Murder Statute, Act of June 24, 1939, P. L. 872, §701; December 1, 1959, P. L. 1621, §1, 18 P.S. §4701. Appellant was sentenced to life imprisonment, and the matter is now before this Court on direct appeal from that judgment of sentence.

Appellant argues that the court below erred in convicting him of murder in the first degree when the fatal

act was committed by his confederate after the robbery had been completed, in the absence of appellant, and without his knowledge and approval. Tangentially, he argues that the killing was not in furtherance of a robbery because the robbery had been completed and the killing was accomplished subsequent thereto in appellant's absence. We disagree with appellant's contentions and affirm the judgment of sentence.

Appellant and his confederate, one Gilmore, had for some time engaged in a course of conduct involving the gratification of their homosexual desires as well as providing funds to them. Their scheme was to have Gilmore "pick up" a homosexual partner and take him to a location prearranged with appellant. While Gilmore and his "pickup" were engaged in homosexual acts, appellant would appear and the victim would be robbed. Thereafter appellant and Gilmore would divide the proceeds.

On April 24, 1969, appellant and Gilmore went to the Greyhound Bus Terminal in Center City, Philadelphia, where Gilmore went to the men's room and emerged with the intended victim for that day. He gave the necessary sign, by wink or nod, to appellant, who knew where to appear in furtherance of their scheme. When appellant arrived at the prearranged spot, a platform between two levels of stairs in the terminal building, he observed Gilmore and the victim in the course of homosexual relations. Appellant then made his appearance and Gilmore pulled out a razor and demanded money. Appellant thereupon removed the victim's wallet from his pocket.

From this point on the testimony of appellant is somewhat in conflict. In a statement given to the police, the voluntariness of which was determined in a pretrial suppression hearing, and which voluntariness is not here contested, appellant said that at that point

he and Gilmore heard someone on the stairs and thought the sounds might be coming from police. Appellant opened a door and saw two men, one of whom he recognized as a homosexual. As he was standing outside the door, he heard a scuffle, the noise of someone falling down the stairs and of moaning. He and Gilmore then ran up the stairs and went on about their business.

In the degree-of-guilt hearing, appellant testified that after he took the victim's wallet, he said to Gilmore, "come on," but Gilmore said that he would remain behind to complete his homosexual activity. He further stated that he then left and started walking away down Kennedy Boulevard and was joined by Gilmore some five or ten minutes later. In this testimony he denied having heard a scuffle when he left the scene, and also denied that he knew that the victim had been injured until learning of it the next day in the newspapers. In both versions appellant admits that once he and Gilmore rejoined forces, they divided the stolen money between them, went drinking together at a bar, and then set off for home together on the subway.

We are convinced that either version supplies ample basis for a finding of murder in the first degree under the felony murder rule. Appellant contends that recent attacks on the murder felony rule, such as this Court's decisions in *Com. ex rel. Smith v. Myers,* 438 Pa. 218, 261 A. 2d 550 (1970), and *Commonwealth v. Redline,* 391 Pa. 486, 137 A. 2d 472 (1958), dictate a conclusion opposite to that reached by the court below and affirmed here. While it is true that both *Redline* and *Smith* were in part critical of the murder felony rule and limited its application in certain situations, neither case went so far as to dictate any result other than a finding of first-degree murder in these circumstances. In *Redline,* we held that the murder felony

doctrine did not apply where one of the felons was killed by a police officer in a gun battle which followed the robbery. In *Smith,* we concluded that the rule was inapplicable to a situation where one police officer killed another during the course of a gun battle which ensued while the felons were attempting to escape subsequent to the robbery. In both instances, the deadly force was supplied by someone other than one of the felons. Those cases are clearly distinguishable from the instant case where one of the felons killed the victim of the felony. Appellant and Gilmore were clearly involved in a robbery which resulted in the death of the victim, the deadly force having been applied by Gilmore, one of the participants in the robbery. Appellant may not escape responsibility for that murder by maintaining that the killing occurred subsequent to the completion of the robbery. The evidence is clear that when Gilmore pushed the victim down the stairs, it was for the purpose of facilitating his escape. That act was part and parcel of the act of robbery, in which act appellant was a willing participant. Nor does the fact that appellant was not physically present at the time of the killing, assuming that his trial testimony version of the crime is truthful, absolve him of guilt in the murder. There is no necessity that a co-conspirator be physically present at the actual crime in order that he may be found guilty of first-degree murder under the felony murder rule. In *Commonwealth v. Coleman,* 402 Pa. 238, 166 A. 2d 525 (1961), we held that the driver of a getaway car who had never been present at the actual scene of the robbery or the murder, and who was adjudged to be an accessory before the fact of robbery, was equally guilty of murder with the principal, even though he was not on the scene in person. See also *Commonwealth v. Lowry,* 374 Pa. 594, 98 A. 2d 733 (1953), *Commonwealth v. Gilida,* 309

Pa. 501, 164 A. 531 (1932). Appellant is much more than an accessory to robbery. He is a co-conspirator and co-participant in the robbery which eventuated in the death of the victim.

If more were needed, it is readily supplied by this record. The record reveals that on at least three prior occasions when appellant and Gilmore had engaged in similar acts of robbery with strikingly parallel methods of operation and time sequences, Gilmore had pushed the victim down the stairs in order to facilitate his escape, appellant's escape, or the escape of both of them. In one former incident, not only had the victim been pushed down the stairs, but his wrists had been slashed by Gilmore using the razor which was a part of their paraphernalia. On one such former occasion, the push down the stairs resulted in the victim suffering a fractured pelvis. Appellant was, therefore, clearly aware of Gilmore's propensity to push his victims down the stairs and otherwise assault them subsequent to the robberies and must be deemed to have been aware of the fact that such activity could lead to very grievous bodily injury or even to death.

Appellant testified that he had protested this practice of violence to Gilmore since he, appellant, did not think it was necessary to injure a victim after his money has been obtained. There is, however, no evidence that these protests had brought any agreement from Gilmore to change his tactics or that appellant believed that he would change his tactics, or that appellant urged Gilmore to refrain from violence on the occasion in question.

Appellant, who split the proceeds of the robbery with Gilmore following the killing, who continued to associate with Gilmore thereafter, who was perfectly aware of Gilmore's tendencies, having had first-hand experience with them on at least three prior occasions,

and who was a willing participant in the robbery scheme which he knew could conclude as this one did, must suffer with Gilmore the consequences of the fatal cranial injuries suffered by their victim when he was pushed down the stairs in the course of this robbery.

Judgment of sentence affirmed.

Mr. Justice POMEROY concurs in the result.

Mr. Justice NIX took no part in the consideration or decision of this case.