Commonwealth *v.* McNeal, Appellant.

Argued January 22, 1974. Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Robert M. Pressman,* with him *Pressman and Lipsky,* for appellant.

*Albert L. Becker,* Assistant District Attorney, with him *James T. Ranney, David Richman,* and *Milton M. Stein,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, May 22, 1974:

Gregory McNeal was convicted by a jury of rape, conspiracy to commit rape and murder in the first de-

gree. After denial of post-trial motions, a sentence of life imprisonment was imposed on the murder conviction as the jury directed in its verdict. A concurrent prison sentence of seven and one-half to fifteen years was imposed on the rape conviction.[1] This one appeal followed.[2]

The prosecution followed the finding of the abandoned body of a nineteen-year-old female in a vacant lot in Philadelphia. The body bore evidence of horrible sex abuse and untimely death due to manual strangulation. It was the Commonwealth's position at trial that McNeal and other males entered into an agreement or conspiracy to forcibly rape the victim, and in the perpetration of the rape she was killed by one or more of the group. McNeal testified that the victim willingly went with him and two others to a certain house where she voluntarily undressed and consensually engaged in sexual intercourse with his two companions; that four other males then arrived on the scene, and he left the premises because he feared there would be trouble due to the crowd.

In this appeal, McNeal does not dispute entering into the conspiracy to rape, as charged by the Commonwealth, but contends "the felony-murder doctrine should not be applied where the murder is not committed in furtherance of the conspiracy." This is, undoubtedly, correct legally and morally, but whether or not the killing in this case was "committed in further-

---

[1] Sentence was not imposed on the conspiracy conviction.

[2] Under the Appellate Court Jurisdiction Act, appellate jurisdiction of McNeal's rape conviction and sentence is vested in the Superior Court. Act of July 31, 1970, P. L. 673, No. 223, Art. III, §302, 17 P.S. §211.302. The Commonwealth has not interposed an objection on this score however, and the failure to object operated to perfect this Court's jurisdiction of the judgment imposed on the rape conviction, unless the Court orders otherwise. Appellate Court Jurisdiction Act, supra, 17 P.S. §211.503.

ance of the conspiracy" was a question of proof for the jury to resolve. Even though McNeal testified he had departed from the scene of the killing before it occurred, his credibility was for the jury. Furthermore, the fact that he left the scene before the killing would not, in itself, exonerate him from culpability for the killing, if the killing were committed in furtherance of the conspiracy of which he was a part. *Commonwealth v. Waddy*, 447 Pa. 262, 290 A. 2d 238 (1972), and *Commonwealth v. Thomas*, 410 Pa. 160, 189 A. 2d 255 (1963). And, it would matter not that McNeal did not anticipate the victim would be killed in furtherance of the conspiracy. See *Commonwealth v. Guida*, 341 Pa. 305, 19 A. 2d 98 (1941). Nor would it matter that others joined and participated in the conspiracy after it began. Cf. *United States v. Dolasco*, 470 F. 2d 1297 (3d Cir. 1972), and *United States v. Nasse*, 432 F. 2d 1293 (7th Cir. 1970).

After studying the record, we are completely satisfied the proof was ample for the jury to find that McNeal and others conspired to rape the victim involved, and that the killing was committed in the furtherance of this conspiracy. We also have no doubt the jury was also warranted in finding McNeal had not withdrawn from the conspiracy before the killing occurred. Hence, the jury had the right to apply the felony-murder doctrine and return a verdict of guilty of murder in the first degree.

Alternatively, McNeal maintains errors occurred during the trial which require a retrial. To these alleged errors, we now direct our discussion.

First, it is asserted it was error for the trial court to admit into evidence the bloodstained clothing of the deceased victim without cautionary instructions to the jury. Concomitantly, it is urged this evidence had no probative value and its only purpose was to inflame the passions of the jurors. The trial record discloses that

there was neither a request nor an objection to the failure of the court to give cautionary instructions. Additionally, the trial record discloses the admission of this evidence was not objected to at trial for the reasons now asserted. The only objection to the evidentiary use of the victim's clothing voiced at trial was that it had not been established as belonging to the victim at the time it was offered for admission. It has long been the rule in this jurisdiction that if the ground upon which an objection to evidence is based is specifically stated, all other reasons for its exclusion are waived, and may not be raised post trial. *Commonwealth v. Budd,* 443 Pa. 193, 278 A. 2d 879 (1971), and *Commonwealth v. Raymond,* 412 Pa. 194, 194 A. 2d 150 (1963). Furthermore, the clothing was properly admitted in evidence under the circumstances.

As noted before, it was McNeal's contention that the victim voluntarily removed her clothing and consensually engaged in sexual intercourse. The trial evidence established that when the victim's body was found, there was dry blood near her nose, mouth and rectum; there were lacerations in the area leading into the vagina; there were also lacerations of the peritoneum (the surface of the skin between the back of the vagina and rectum), and extensive lacerations of the rectal mucosa, plus tears of the anal sphincter. The clothing with bloodstains correlating to these injuries was relevant and of probative value to show the victim did not remove her clothing voluntarily, as contended by McNeal. Finally, the clothing was not unnecessarily displayed to the jury, and only exhibited at the time it was marked as a trial exhibit. This assignment of error will, therefore, be overruled. Cf. *Commonwealth v. Johnson,* 450 Pa. 575, 301 A. 2d 632 (1973).

Next, it is alleged the district attorney exceeded the bounds of proper cross-examination of McNeal "by char-

acterizing his statements as lies and not worthy of belief." The record fails to support this contention.

The only portion of the district attorney's cross-examination upon which this allegation could possibly be bottomed is as follows: "Q. What were you doing on the corner with Cooper and Myles? A. We were drinking. Q. And your answer, with the consulting of your attorney at that time, was no; is that right? A. I don't recall but if it is in statement, I probably said it. Q. You said it. Your attorney was there when you said it, wasn't he? A. Yes, he was. Q. In response to the question, were you drinking prior to going to Johnson's house, your answer, no. Now, which do you want this jury to believe, that you were or you weren't? A. MR. PRESSMAN: Objection, sir. THE COURT: All right. Ask him which is correct. BY MR. KNAUER: Q. Which is correct? Which is true? A. We had two pints of whiskey. Q. And you were drinking them? A. Yes, we was. Q. All right. When you made this statement, you were lying? You told a lie? MR. PRESSMAN: Objection. THE COURT: Objection overruled."

In support of his position, McNeal relies on *Commonwealth v. Potter*, 445 Pa. 284, 285 A. 2d 492 (1971), but a comparison of this factual situation with what occurred in *Potter* readily manifests *Potter* is inapposite. In *Potter* the district attorney said this to the defendant during cross-examination: "What you have said about being beaten by the police is a malicious lie like the rest of your testimony." This was clearly an expression of the Commonwealth representative's personal opinion of the falsity of the defendant's testimony and, as such, was improper and was violative of the trial conduct required of district attorneys. See ABA project on Standards for Criminal Justice Relating to the Prosecution and Defense Function. Section 5.6(b) (Prosecution Function) (Approved Draft 1970). See also *Commonwealth v. Lipscomb*, 455 Pa. 525, 317

A. 2d 205 (1974), and *Commonwealth v. Toth,* 455 Pa. 154, 314 A. 2d 275 (1974).

Instantly, the prosecutor did not express his personal belief as to the truth or falsity of whether McNeal was drinking; he did, however, bring to the attention of the jury that McNeal was testifying at trial in contradiction of his earlier statement to the police which was made in the presence of his attorney. Since both statements could not possibly be true, the prosecutor was justified in asking McNeal whether he was "lying" when he made the initial statement. In retrospect, the words "lie" or "lying" may have been a harsh classification of McNeal's misstatement of a particular circumstance; however, these remarks fall far short of the type of prejudicial remarks which in the past we have held to be reversible error. Compare *Commonwealth v. Lipscomb,* supra; *Commonwealth v. Toth,* supra; *Commonwealth v. Brooks,* 454 Pa. 75, 309 A. 2d 732 (1973); *Commonwealth v. Revty,* 448 Pa. 512, 295 A. 2d 300 (1972); *Commonwealth v. Potter,* supra, and *Commonwealth v. Clark,* 322 Pa. 321, 185 A. 764 (1936). We have consistently ruled that comments by the district attorney do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict. Cf. *Commonwealth v. Hoffman,* 439 Pa. 348, 266 A. 2d 726 (1970), and *Commonwealth v. Capalla,* 322 Pa. 200, 185 A. 203 (1936). The challenged remarks are clearly not in this category.

The final two assignments of error concern the trial court's charge to the jury.

Initially, it is maintained the court's "definition and description of the elements of second degree murder as 'any killing with malice which is . . . not committed in the perpetration of or attempt to perpetrate rape'

withdrew from the jury their right to find the defendant guilty of that charge." We are not convinced the jury was deprived of returning such a verdict.

It is true that a jury has the power to fix the defendant's guilt at murder in the second degree, even though the only evidence in the case establishes the killing was committed in the perpetration of a rape. See *Commonwealth v. Meas,* 415 Pa. 41, 202 A. 2d 74 (1964), and *Commonwealth v. Turner,* 367 Pa. 403, 80 A. 2d 708 (1951). And the trial court is required to so instruct the jury. Cf. *Commonwealth v. Meas,* supra. However, in evaluating the correctness of instructions to a jury, the charge must be read and considered in its entirety, and it is the general effect of the charge that controls. *Commonwealth v. Fell,* 453 Pa. 531, 309 A. 2d 417 (1973). After reading the entire charge in this case, we are convinced the jury was clearly apprised of its power to find McNeal guilty of murder in the second degree.

In addition to that portion of the charge now challenged, the court told the jury: "If you believe beyond a reasonable doubt that the deceased was raped by the defendant and his associates, or raped only by his confederates, but that he aided, encouraged, assisted and abetted them; and that she was killed during the perpetration of the rape by one of his confederates in furtherance of the rape, and there was a direct causal connection between the rape and the death, and not an accidental killing, then the defendant is guilty of felony-murder even though one of his associates strangled the deceased. Under the statute, this is murder in the first degree. However, you may find him guilty of murder in the second degree."

Later, when asked to give an additional charge to the jury elaborating on the differences between murder in the first and murder in the second degree, the trial judge instructed: "I also said that although under this

statute it is murder in the first degree to commit a felony murder, you may still find a person guilty of murder in the second degree." Clearly, the jury was not deprived of its power to fix the degree of appellant's guilt. Cf. *Commonwealth v. Schmidt,* 423 Pa. 432, 224 A. 2d 625 (1966).

The second complaint to the court's charge is directed to that portion dealing with McNeal's asserted withdrawal from the conspiracy. In substance, it is argued this portion of the charge left "much to be desired" and should have been "more definitive and complete." The record discloses no request was made for additional instructions on this facet of the defense and only a general exception to the charge was entered. Further, this alleged error was not raised in the post-trial motions filed in the trial court. Under such circumstances, the issue will not be considered on appeal. *Commonwealth v. Jones,* 446 Pa. 223, 285 A. 2d 477 (1971).

Judgments affirmed.

Mr. Chief Justice JONES took no part in the consideration or decision of this case.

Mr. Justice ROBERTS and Mr. Justice NIX concur in the result.