393 A.2d 321

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**John DeFRANCESCO, Appellant.**

Supreme Court of Pennsylvania.

Argued April 14, 1978.

Decided Oct. 5, 1978.

Martin J. King, Public Defender, Richard R. Fink, First Asst. Public Defender, Bruce K. Doman, Asst. Public Defender, Doylestown, for appellant.

Kenneth G. Biehn, Dist. Atty., Peter F. Schenck, Doylestown, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX and LARSEN, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

Appellant, John DeFrancesco, was arrested on June 21, 1973 by the Quakerstown Borough Police, Bucks County. The basis of appellant's arrest stemmed from his failure to disperse upon an official order. Act of December 6, 1972, P.L.No. 334, § 1, eff. June 6, 1973, 18 Pa.C.S.A. § 5502.[1]

Appellant was tried by a judge sitting with a jury and was found guilty of violating § 5502 of the Crimes Code.

1. 18 Pa.C.S.A. § 5502 provides:
 "Where three or more persons are participating in a course of disorderly conduct which causes or may reasonably be expected to cause substantial harm or serious inconvenience, annoyance or alarm, a peace officer or other public servant engaged in executing or enforcing the law may order the participants and others in the immediate vicinity to disperse. A person who refuses or knowingly fails to obey such an order commits a misdemeanor of the second degree."
 18 Pa.C.S.A. § 5503 defines "disorderly conduct" as:
 "(a) Offense defined.—A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm or recklessly creating a risk thereof, he:

Post-verdict motions were denied and on August 21, 1975, appellant was sentenced to a term of imprisonment of six months to twenty-three months. On September 17, 1975, the court below, acting pursuant to appellant's petition for reconsideration of sentence, reduced the term of imprisonment to three months to twenty-three months.

An appeal from the judgment of sentence was taken to Superior Court, which affirmed. *Commonwealth v. DeFrancesco*, 240 Pa.Super. 705, 360 A.2d 235 (1976). Appellant filed a petition for allowance of appeal in this court, which we granted.

Appellant first argues the evidence is insufficient to sustain his conviction for violating § 5502 of the Crimes Code, "Failure to Disperse Upon Official Order". We do not agree.

Appellant's initial attack centers on his assertion that the Commonwealth failed to produce evidence sufficient, as a matter of law, to meet the statutory element of "*three or more persons participating* in a course of disorderly conduct . . . ." § 5502 of the Crimes Code.

In *Commonwealth v. Rose*, 463 Pa. 264, 344 A.2d 824 (1975), this court reiterated the test of judging the sufficiency of the evidence by an appellate court:

> "(1) engages in fighting or threatening, or in violent or tumultuous behavior;
> "(2) makes unreasonable noise;
> "(3) uses obscene language, or makes an obscene gesture; or
> "(4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.
> "(b) Grading.—An offense under this section is a misdemeanor of the third degree if the intent of the actor is to cause substantial harm or serious inconvenience, or if he persists in disorderly conduct after reasonable warning or request to desist. Otherwise disorderly conduct is a summary offense.
> "(c) Definition.—As used in this section the word 'public' means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any premises which are open to the public." December 6, 1972, P.L. 1482, No. 334, § 1, eff. June 6, 1973.

"The test of sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing the proper inferences favorable to the Commonwealth, the trier of fact could reasonably have found that all of the elements of the crime had been established beyond a reasonable doubt. . . . Moreover, it is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. . . . The factfinder is free to believe all, part, or none of the evidence. . . ." (Citations omitted.)

In *Commonwealth v. Cook*, 468 Pa. 249, 361 A.2d 274 (1976), we delineated the necessary elements of § 5502 of the Crimes Code:

"In § 5502, an actor is in violation of the section if, when three or more persons are engaged in 'disorderly conduct,' which may cause, or may reasonably be expected to cause, 'substantial harm or serious inconvenience, annoyance or alarm,' a police officer or other public official acting within the scope of his authority orders the participant and others in the area to disperse and such actor refuses to obey such order, he or she is guilty of a misdemeanor of the second degree.

"The gravaman of the section is the failure to obey an order by a police officer or other public official to disperse when three or more persons are engaging in a 'course of disorderly conduct.' " (Footnote omitted.)

See also *Commonwealth v. Cook, supra*, concurring opinion by Mr. Justice Pomeroy, joined by Mr. Justice Nix.

The essential elements of § 5502 are:

1. Three or more persons are "participating in a course of disorderly conduct."

2. The above "course of disorderly conduct" may cause or reasonably be expected to cause "substantial harm or serious inconvenience, annoyance or alarm."

3. A policeman or other public official acting within his scope of authority orders the participants and others in the area to disperse.

4. The person refuses such dispersal order or knowingly fails to comply with the order.

If the evidence presented at trial, from whatever source, substantiates the above elements, a criminal defendant is guilty of a misdemeanor of the second degree. Appellant in the instant case does not challenge the existence of sufficient evidence, if believed, to satisfy the last three elements of the offense charged. Appellant's sole contention is that the Commonwealth has not introduced evidence sufficient to sustain the establishment of the first enumerated element, i. e., three or more persons are participating in a course of disorderly conduct.

Specifically, appellant argues that the evidence, even if viewed under the *Rose* standard, does not establish that "three or more persons" were "participating in a course of disorderly conduct." The emphasis of the argument centers on the "three or more persons" requirement of § 5502. The facts surrounding this issue are as follows.

On June 21, 1973, at approximately 7:00 or 7:30 p. m. a group of twenty-five persons, between the ages of sixteen and twenty-four gathered at Triangle Park, in the middle of Quakerstown and across the street from the police station. Appellant was identified as being a member of this group. The activities of the group included beer drinking, throwing beer cans, blocking traffic on the street bordering the park, yelling obscenities [2] and urinating in the alleys and streets surrounding the park. Between the start of the above gathering and 10:45 p. m. the police received numerous complaints from residents living near the park. The police warned the group on several occasions, but the above behavior continued. At approximately 10:45 p. m., the police arrested Kenneth Kramer for urinating on the street, and George Howard for attempting to interfere with Kramer's arrest. After transporting Kramer and Howard to the police station, the police returned to the park. The group continued the above-described conduct. The police ordered

2. There is no more detailed definition of what the specific words being uttered were.

the crowd to disperse. Upon failure to comply with the order, Joseph Frank and John Howard were arrested. While the above arrests were being completed, appellant approached the police car in which Joseph Frank and John Howard were seated. Police Officer Joseph Lapinski told appellant to leave, but appellant informed the officer that he wanted to speak to one of the occupants of the car. Lapinski replied that all talking must take place at the police station. The police then took Joseph Frank and John Howard to the police station at approximately 11:00 p. m.

During the processing of Howard and Frank, appellant, accompanied by Roger Leonard and a group of unidentified individuals, congregated outside of the police station. The testimony varies about the size of the group which accompanied appellant and Leonard, placing the size of the group between a minimum of three to four to a maximum of seven to ten individuals in addition to appellant and Leonard.

Leonard began banging at the police station door and appellant yelled obscenities and demanded admittance to the station. The testimony reveals that in addition to obscenities, appellant called the police officers "pigs." The police exited the station and arrested Leonard. The officers ordered appellant and the members of the accompanying group to disperse. The group, save appellant, dispersed, removing themselves to either the street or the park. Appellant, however, continued his verbal abuse of the police officers as he slowly backed away. The police officers continued to admonish appellant to cease the verbal harangues and also continued to order him to disperse. After a few warnings and dispersal orders, appellant was arrested and charged with violating § 5502 of the Crimes Code. Officer Lapinski testified that during the above confrontation, the six arrested individuals continued to be disorderly in the police station itself.

■ Initially, concerning appellant's arguments as to the statutory requirement of three or more persons being disorderly before a police officer may issue a § 5502 dispersal order, a review of the evidence, in the light most favorable

to the Commonwealth and drawing all proper inferences, reveals sufficient evidence to sustain appellant's conviction.

■ The testimony reveals that all of the above recited events took place within a forty to forty-five minute period. The factfinder may have chosen to consider all of the events leading up to appellant's arrest from 10:45 until 11:30 as evidence sufficient to satisfy the three or more person requirement of § 5502. This evidence is in the record and it is not the function of an appellate court to retry or substitute its judgment for that of a petit jury. The record also reveals that while appellant was yelling obscenities and Leonard was banging on the door of the police station, the six previously arrested individuals continued a course of conduct described as disorderly. Again, the record reveals sufficient evidence, if believed by the jury, for a finding that three or more persons were engaging in a course of disorderly conduct at the time of the dispersal order. We believe the evidence, when reviewed under the *Rose* standard, is sufficient to meet the requirement of three or more persons under § 5502 of the Crimes Code.

■ Appellant's second argument is that the evidence is insufficient under § 5502 because at the time of the dispersal order he was the only individual present and, therefore, he could not "disperse" but only "leave."

Appellant's argument borders on the frivolous. Appellant bases his argument on the fact that because the six or seven individuals who accompanied him and Leonard to the police station dispersed upon the police's initial order, that he being the only person to defy such order, subsequently could not be ordered to disperse. We do not agree. If the initial dispersal order was valid, see discussion, *supra*, appellant's noncompliance cannot be justified or excused by his companions' compliance. The police were initially warranted in ordering the crowd's dispersal. Appellant did not disperse, but his supporting group did leave the area. The police continued to order appellant to leave the area, and he continued to refuse. His refusal was violative of § 5502 and the record is sufficient to sustain his conviction.

■ Appellant next argues that the court below erred in its charge to the jury. We do not agree. The complained-of portions of the charge are as follows:

"Now, if you accept the police officer's version, you have two questions. If you accept the police officer's version that DeFrancesco and Leonard were leading a group of seven to ten youths, pounding on the door, creating a rumpus, using bad language, that sort of thing, and Leonard was arrested and the rest were all told to disperse and all the rest of them did disperse except the defendant here. Then, I think you should find him guilty (N.T. 116).

\* \* \* \* \* \*

"If you should accept the Commonwealth's version of the incident that DeFrancesco and Leonard came to the police station leading a group of seven to ten youths and they continued to create a rumpus there, pounding on the door, using bad language—and you recall the testimony—Leonard was arrested, the rest of them did disperse but DeFrancesco did not disperse, and you find that he did not leave as ordered, then you should find him guilty (N.T. 122)."

In *Commonwealth v. Lesher*, 473 Pa. 141, 373 A.2d 1088 (1977), this court stated the standard of reviewing a trial court's instructions to the jury, wherein we stated:

"It is well-established, however, that in charging the jury the trial court is free to use its own form of expression; the only issue is whether the area is adequately, accurately and clearly presented to the jury. *Commonwealth v. McComb*, 462 Pa. 504, 341 A.2d 496 (1975). Also, in evaluating a challenge to the correctness of instructions to the jury, the charge must be read and considered in its entirety and it is the general effect of the charge that controls. *Commonwealth v. Rodgers*, 459 Pa. 129, 327 A.2d 118 (1974); *Commonwealth v. McNeal*, 456 Pa. 394, 319 A.2d 669 (1974)."

Reviewing the above charge in its entirety, we find no error. Appellant makes two objections to the charge of the court below:

1. That the court erred in not charging that if appellant was the only person who did not disperse pursuant to the initial police order, a single person is not then within the ambit of a § 5502 dispersal order.

2. That the court erred in defining the elements of § 5502 as they applied in this case.

Having determined *supra* that the above-described conduct of appellant was within the scope of conduct detailed in § 5502, we find no error in the charge of the court below.

■ Appellant's second allegation of error concerning the trial court's charge is also without merit. The entire charge in the instant case reveals that the court adequately defined the elements of § 5502 of the Crimes Code—failure to disperse, and § 5503 of the Crimes Code—disorderly conduct.[3] The court quoted verbatim from both sections of the Crimes Code and then summarized the sections. The jury was also instructed that the Commonwealth had the burden of proof of all elements of the crime charged and that the burden was beyond a reasonable doubt.

■ Appellant next alludes to the trial court's above comments concerning its instruction to the jury that if they found certain facts, then a guilty verdict was appropriate. We do not agree that the comments require a reversal of this judgment of sentence. Appellant argues that these comments were a directed verdict of guilty.

■ Again, reviewing the charge as a whole, the trial court clearly and adequately instructed the jury that they were the sole judge of the facts and of credibility, and that their recollection of the events, coupled with their application of the law, was controlling. See *Commonwealth v. Yount*, 455 Pa. 303, 314 A.2d 242 (1974).

Appellant next argues that § 5502 of the Crimes Code is unconstitutional. His first constitutional attack is that § 5502 is void for vagueness and, therefore, is violative of due process. We do not agree.

3. See *Commonwealth v. Cook, supra*, both the opinion of the Court (O'Brien, J.) and the concurring opinion (Pomeroy, J.).

■■■■ The United States Supreme Court, in *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972), articulated the standard to be used in determining whether a statute is void for vagueness:

". . . [when] it 'fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute,' *United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 98 L.Ed. 989, and because it encourages arbitrary and erratic arrests and convictions. *Thornhill v. Alabama*, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093; *Herndon v. Lowry*, 301 U.S. 242, 57 S.Ct. 732, 81 L.Ed. 1066."

We do not believe that § 5502 of the Crimes Code violates either of the above requirements:

1. Failure to give adequate notice of what conduct is prohibited.

The statute in the instant case authorizes a person's arrest when that person knowingly refuses to obey an order given by a police officer or other public official in the execution of his duties. The police officers or other public official can only give a dispersal order when three or more persons are engaged in a course of disorderly conduct, as defined by § 5503 of the Crimes Code, and in addition, such conduct causes or may reasonably be anticipated to cause "substantial harm, serious inconvenience, annoyance or alarm." We believe that a person of "ordinary intelligence" is capable of understanding the clear wording of this criminal statute and can comport his conduct to statute without sacrificing any constitutionally protected activities.

In *Colten v. Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), the United States Supreme Court, in reviewing a similar statute as the one at issue here, held the statute constitutional against a vagueness attack and admonished: [4]

4. Colten was convicted of violating Ky.Rev.Stat. § 437.016(1)(f) (Supp. 1968), which states:

". . . The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited. . . ." *Colten, supra,* at 110, 92 S.Ct. at 1957.

Appellant's initial challenge to the constitutionality of § 5502 must fail.

2. Encourages arbitrary and erratic arrests and convictions.

The basis of this second test of vagueness is also premised upon and integrally related to the initial test of vagueness, i. e., fair warning of what conduct constitutes a violation of the statute. The second prong focuses not on the actor's perception of the statutes' wording, but rather on the enforcement method of the police and the court's disposition of the indictment before it.

Reviewing § 5502, we cannot say the language is so broad as to permit the police unfettered discretion in their arrest procedures and the courts unchecked authority in determining the guilt or innocence of accused violators. The second prong of appellant's constitutional attack must also fail.

■■■ Appellant's final argument is that § 5502 is overbroad. Appellant's argument is centered on his assertion that when § 5502 permits the police to disperse persons *other than those engaging in a "course of disorderly conduct,"* the statute presents an impermissible infringement on the First Amendment rights of the nondisorderly "other" persons.

> "(1) A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
>
> \* \* \* \* \* \*
>
> "(f) Congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse . . . ." *Colten, supra,* at 108, 92 S.Ct. at 1956.

It is clear from this record that appellant is *not* claiming that his conduct was within the sphere of First Amendment protections, but rather that the undefined "other" persons' conduct may be within that sphere and, therefore, this court should consider a facial overbreadth challenge to the statute.

The United States Supreme Court, in *Broadrick v. Oklahoma*, 413 U.S. 601, 610–15, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830 (1973), copiously discussed the doctrine of facial overbreadth, wherein it stated:

"Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court. See, e. g., *Austin v. The Aldermen*, 7 Wall. 694, 698–699, 19 L.Ed. 224 (1869); *Supervisors v. Stanley*, 105 U.S. 305, 311–315, 26 L.Ed. 1044 (1882); *Hatch v. Reardon*, 204 U.S. 152, 160–161, 27 S.Ct. 188, 51 L.Ed. 415 (1907); *Yazoo & M.V.R. Co. v. Jackson Vinegar Co.*, 226 U.S. 217, 219–220, 33 S.Ct. 40, 57 L.Ed. 193 (1912); *United States v. Wurzbach*, 280 U.S. 396, supra, at 399, 50 S.Ct. 167, 74 L.Ed. 508; *Carmichael v. Southern Coal & Coke Co.*, 301 U.S. 495, 513, 57 S.Ct. 868, 81 L.Ed. 1245 (1937); *United States v. Raines*, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960). A closely related principle is that constitutional rights are personal and may not be asserted vicariously. See *McGowan v. Maryland*, 366 U.S. 420, 429–430, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). These principles rest on more than the fussiness of judges. They reflect the conviction that under our constitutional system courts are not roving commissions assigned to pass judgment on the validity of the Nation's laws. See *Younger v. Harris*, 401 U.S. 37, 52, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Constitutional judgments, as Mr. Chief Justice Marshall recognized, are justified only out of the necessity of adjudicating rights in particular cases between the litigants brought before the Court:

"'So if a law be in opposition to the constitution; if both the law and the constitution apply to a particular

case, so that the court must either decide that case conformably to the law, disregarding the constitution; or conformably to the constitution, disregarding the law; the court must determine which of these conflicting rules governs the case. This is of the very essence of judicial duty.' *Marbury v. Madison,* 1 Cranch 137, 178, 2 L.Ed. 60 (1803).

"In the past, the Court has recognized some limited exceptions to these principles, but only because of the most 'weighty countervailing policies.' *United States v. Raines,* 362 U.S., at 22–23, 80 S.Ct. 519, 4 L.Ed.2d 524. One such exception is where individuals not parties to a particular suit stand to lose by its outcome and yet have no effective avenue of preserving their rights themselves. See *Eisenstadt v. Baird,* 405 U.S. 438, 444–446, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *NAACP v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). Another exception has been carved out in the area of the First Amendment.

"It has long been recognized that the First Amendment needs breathing space and that statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society. *Herndon v. Lowry,* 301 U.S. 242, 258, 57 S.Ct. 732, 81 L.Ed. 1066 (1937); *Shelton v. Tucker,* 364 U.S. 479, 488, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960); *Grayned v. City of Rockford,* 408 U.S. 104, at 116–177, 92 S.Ct. 2294, 33 L.Ed.2d 222. As a corollary, the Court has altered its traditional rules of standing to permit—in the First Amendment area—'attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity.' *Dombrowski v. Pfister,* 380 U.S. 479, at 486, 85 S.Ct. 1116, 14 L.Ed.2d 22. Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may

cause others not before the court to refrain from constitutionally protected speech or expression.

"Such *claims of facial overbreadth have been entertained in cases involving statutes which, by their terms seek to regulate 'only spoken words.'* Gooding v. Wilson, 405 U.S. 518, 520, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972). See *Cohen v. California*, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971); *Street v. New York*, 394 U.S. 576, 89 S.Ct. 1354, 22 L.Ed.2d 572 (1969); *Brandenburg v. Ohio*, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969); *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). In such cases, it has been the judgment of this Court that the possible harm to society in permitting some unprotected speech to go unpunished is outweighed by the possibility that protected speech of others may be muted and perceived grievances left to fester because of the possible inhibitory effects of overly broad statutes. *Overbreadth attacks have also been allowed where the Court thought rights of association were ensnared in statutes which, by their broad sweep, might result in burdening innocent associations.* See *Keyishian v. Board of Regents*, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 628 (1967); *United States v. Robel*, 389 U.S. 258, 88 S.Ct. 419, 19 L.Ed.2d 508 (1967); *Aptheker v. Secretary to State*, 378 U.S. 500, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964); *Shelton v. Tucker, supra. Facial overbreadth claims have also been entertained where statutes, by their terms, purport to regulate the time, place, and manner of expressive or communicative conduct*, see *Grayned v. City of Rockford*, supra, 408 U.S. at 114–121, 92 S.Ct. 2294; *Cameron v. Johnson*, 390 U.S., at 617–619, 88 S.Ct. 1335, 20 L.Ed.2d 182; *Zwickler v. Koota*, 389 U.S. 241, 249–250, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); *Thornhill v. Alabama*, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940), *and where such conduct has required official approval under laws that delegated standardless discretionary power to local functionaries, resulting in virtually unreviewable prior restraints on First Amendment rights.* See *Shuttlesworth v. Birmingham*, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969); *Cox v. Louisiana*, 379 U.S. 536, 553–558, 85 S.Ct. 453,

13 L.Ed.2d 471 (1965); *Kunz v. New York,* 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280 (1951); *Lovell v. Griffin,* 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938).

" . . . *Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute.* See *Dombrowski v. Pfister,* 380 U.S., at 491, 85 S.Ct. 1116; *Cox v. New Hampshire,* 312 U.S. 569, 61 ` S.Ct. 762, 85 L.Ed. 1049 (1941); *United States v. Thirty-seven Photographs,* 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971); cf. *Breard v. Alexandria,* 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951). Equally important, *overbreadth claims, if entertained at all, have been curtailed when invoked against ordinary criminal laws that are sought to be applied to protected conduct.* In *Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940), Jesse Cantwell, a Jehovah's Witness, was convicted of common-law breach of the peace for playing a phonograph record attacking the Catholic Church before two Catholic men on a New Haven street. The Court reversed the judgment affirming Cantwell's conviction, but only on the ground that his conduct, 'considered in the light of the constitutional guarantees,' could not be punished under 'the common law offense in question.' Id., at 311, 60 S.Ct. 900 (footnote omitted). The Court did not hold that the offense 'known as breach of the peace' must fall *in toto* because it was capable of some unconstitutional applications, and, in fact, the Court seemingly envisioned its continued use against 'a great variety of conduct destroying or menacing public order and tranquility.' Id., at 308, 60 S.Ct. 900. See *Garner v. Louisiana,* 368 U.S. 157, 202–203, 205, 82 S.Ct. 248, 7 L.Ed.2d 207 (1961) (Harlan, J., concurring in judgment). Similarly, in reviewing the statutory breach-of-the-peace convictions involved in *Edwards v. South Carolina,* 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963), and *Cox v. Louisiana, supra,* 379 U.S. at 544–552, 85 S.Ct. 453, the Court considered in detail the State's evidence and in each case concluded that the conduct at issue could not itself be punished under a breach-of-the-peace statute. On that basis, the judgments affirm-

ing the convictions were reversed. See also *Teamsters Union v. Vogt, Inc.*, 354 U.S. 284, 77 S.Ct. 1166, 1 L.Ed.2d 1347 (1957). Additionally, *overbreadth scrutiny has generally been somewhat less rigid in the context of statutes regulating conduct in the shadow of the First Amendment, but doing so in a neutral, noncensorial manner.* See *United States v. Harriss*, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954); *United States v. CIO*, 335 U.S. 106, 68 S.Ct. 1349, 92 L.Ed. 1849 (1948); cf. *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969); *Pickering v. Board of Education*, 391 U.S. 563, 565 n. 1, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Eastern Railroad Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961).

"It remains a 'matter of no little difficulty' to determine when a law may properly be held void on its face and when 'such summary action' is inappropriate. *Coates v. City of Cincinnati*, 402 U.S. 611, 617, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971) (opinion of Black, J.). But the plain import of our cases is, at the very least, that facial overbreadth adjudication is an exception to our traditional rules of practice and that its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech' toward conduct and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect—at best a prediction—cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe. Cf. *Alderman v. United States*, 394 U.S. 165, 174–175, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). To put the matter another way, particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be

real, but substantial as well, judged in relation to the statute's plainly legitimate sweep. . . ." (Footnotes omitted.) (Emphasis added.)

We do not agree with appellant that § 5502 of the Crimes Code is constitutionally defective because of facial overbreadth.

While appellant has "standing" to vicariously challenge § 5502 (*Broadrick, supra*), we believe his facial overbreadth attack must fail. The Supreme Court in *Broadrick* stated:

". . . To put the matter another way, particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep."

 Section 5502 of the Crimes Code permits a police officer to order disorderly participants and "others" in the immediate vicinity of such disorderly participants to disperse. The above dispersal order may lawfully be given only when three or more persons are disorderly and their conduct is such that may reasonably be expected to cause substantial harm or serious inconvenience, annoyance or alarm.

The appellant's challenge to the statute is that the refusal to obey a dispersal order under § 5502 by persons who are not participating in the disorderly conduct, but who *may* be exercising their First Amendment rights, is impermissible. We do not believe that the overbreadth, if any, of § 5502 is both real and substantial when compared and balanced to the statute's "plainly legitimate sweep".

Section 5502 is a legislative tool given police in order to quell or prevent possible minor disorderly conduct situations from escalating into major disruptions, severely and seriously impairing the public's welfare.

In *Cox v. Louisiana*, 379 U.S. 536, 554–55, 85 S.Ct. 453, 464, 13 L.Ed.2d 471 (1965), the Supreme Court stated: ". . . *The rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may*

*address a group at any public place and at any time. The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy.* The control of travel on the streets is a clear example of governmental responsibility to insure this necessary order. A restriction in that relation, designed to promote the public convenience in the interest of all, and not susceptible to abuses of discriminatory application, cannot be disregarded by the attempted exercise of some civil right which, in other circumstances, would be entitled to protection. One would not be justified in ignoring the familiar red light because this was thought to be a means of social protest. Nor could one, contrary to traffic regulations, insist upon a street meeting in the middle of Times Square at the rush hour as a form of freedom of speech or assembly. Governmental authorities have the duty and responsibility to keep their streets open and available for movement. A group of demonstrators could not insist upon the right to cordon off a street, or entrance to a public or private building, and allow no one to pass who did not agree to listen to their exhortations. . ." (Emphasis added.)

When viewed in light of the legitimate interest of § 5502 and the Supreme Court's discussions in *Broadrick* and *Cox, supra,* we believe appellant's facial overbreadth attack must be dismissed.

Order of Superior Court affirmed.

MANDERINO, J., took no part in the consideration or decision of this case.

ROBERTS, J., files a dissenting opinion.

ROBERTS, Justice, dissenting.

The majority holds that in determining whether "three or more persons are participating in a course of disorderly conduct . . ." under 18 Pa.C.S.A. § 5502,[1] police may

1. Act of December 6, 1972, P.L. 334, § 1.

include persons in the vicinity who are not themselves disorderly. It also holds that section 5502 may permit an arrest for refusal to disperse where at the time of the arrest the individual is alone and there is thus no risk of an unruly crowd. I dissent. The majority interprets section 5502 more broadly than its terms permit, relies on facts not of record and erroneously upholds an unconstitutionally vague statute. Because in my view the evidence is insufficient to show a violation of section 5502, when properly interpreted, and because the statute is unconstitutionally vague, I would reverse.

I

The record, when viewed in the light most favorable to the Commonwealth, *Commonwealth v. Rose*, 463 Pa. 264, 344 A.2d 824 (1975), reveals that Appellant was one of a group of twenty-five persons who congregated on a summer evening in a small public park in Quakerstown Borough, Bucks County. Certain members of this group were observed in the early evening drinking beer, throwing beer cans, blocking traffic, shouting "obscenities" and urinating in public. Appellant's exact language is not quoted in the record. Further, there is no evidence that appellant himself engaged in any of these activities. In response to complaints from nearby residents, police ordered the group to disperse several times, but to no avail. At 10:45 p. m. one member of the group was arrested for allegedly urinating in the street and another for allegedly attempting to interfere with his arrest.

Later, after another order to disperse, two more members of the group, Joseph Frank and John Howard, were arrested, evidently on a charge of refusing to comply with the dispersal order. When Frank and Howard were in the police car, ready to be taken away, appellant approached the car stating that he wanted to speak to them. It is undisputed that police told appellant he would have to see Frank and Howard at the police station.

Appellant and several others went to the police station, where they were refused entry. Leonard then pounded on

the doors; appellant shouted alleged "obscenities" and called the police officers "pigs." The police arrested Leonard and ordered appellant, along with the onlookers, to disperse. Although the onlookers dispersed and the appellant remained alone, he was again ordered to disperse. The appellant backed slowly away and was arrested about 110 feet from the station.

## II

Section 5502 was designed to provide police with an effective means of dealing with potentially volatile gatherings of people. If there is no gathering of three or more, the danger to which the statute is addressed simply is not present. Under the statute, police authority to disperse groups is contingent upon disorderly conduct in the same area of three or more individuals. It is clear that where less than three individuals are disorderly, the Legislature considered any apparent danger insufficient to justify a grant of police authority to issue a dispersal order.

The majority concludes that the "three or more persons" requirement of section 5502 could be fulfilled by appellant's presence among the group congregated at the park after 10:45 p. m. (There is no evidence that appellant refused an order to disperse while at the park.) But section 5502 simply does not make one's earlier presence in a group in which three or more persons may have been disorderly a justification for arrest at a later time at a different place and when less than three persons are disorderly. The statute applies only to groups which pose an existing threat. By permitting consideration of the circumstances at the park to support appellant's conviction for refusing to disperse later and elsewhere, the majority transcends the statute.

Alternatively, the majority find the "three or more persons" element of section 5502 satisfied by the presence outside the police station of onlookers who dispersed upon command. In reaching this conclusion, it disregards the standards established by the Legislature and, in effect, permits a general order to disperse whenever there is one

disorderly person in the vicinity of a group not claimed to be disorderly.

In a last effort to justify its determination that there were at least three participants in a disorderly course of conduct, the majority seeks to include those persons who were in custody in the police station, characterizing them as disorderly. Neither the Commonwealth in its brief nor the trial court in its opinion makes any mention of these circumstances. Moreover, it is unreasonable to assume that those who are in a police station in police custody can be included for purposes of the dispersal statute here at issue.

Finally, the statute plainly does not authorize an arrest for disobeying an order to disperse when, at the time of the arrest, there is no group of people in the vicinity. The clear purpose of section 5502 is to permit dispersal of potentially unruly groups which are then in existence. If there is no group, the dangers addressed by the statute are not raised.

In the above respects, I believe the majority has erred in its statutory interpretation. Thus, based on what I view to be the proper interpretation of section 5502, I find the evidence insufficient to support appellant's conviction.

### III

The majority has not only erred in its statutory interpretation, it has in addition erroneously rejected appellant's claim that 18 Pa.C.S.A. § 5502 is unconstitutionally vague in violation of the 1st and 14th amendments. In *Smith v. Goguen*, 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1975) (unconstitutional to bar "contemptuous" treatment of flag), the United States Supreme Court stated:

"The settled principles of [the doctrine of vagueness] require no extensive restatement here. The doctrine incorporates notions of fair notice or warning. Moreover, it requires legislatures to set reasonably clear guidelines for law enforcement officials and triers of fact in order to prevent 'arbitrary and discriminatory enforcement.' Where a statute's literal scope, unaided by a narrowing state court interpretation, is capable of reaching expres-

sion sheltered by the First Amendment, the doctrine demands a greater degree of specificity than in other contexts."

*Id.,* 415 U.S. at 572–73, 94 S.Ct. at 1247 (footnotes omitted).

In its constitutional analysis of 18 Pa.C.S.A. § 5502 the majority relies on *Colten v. Kentucky,* 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972). In *Colten,* one of a number of cars transporting college students from a political demonstration bore an expired license plate. The police stopped the car and made an arrest. The other cars pulled over and a crowd gathered on the highway at the scene of the arrest, thus creating a risk of accident. Colten was ordered to leave, but persisted in his efforts to speak with the arrestee. After five warnings the police arrested him and he was subsequently convicted of disorderly conduct.

*Colten* does not control the outcome in this case, however, because the Court held that Colten's conduct was in no way protected by the first amendment.

"We have little doubt that Colten's conduct in refusing to move on after being directed to do so was not, without more, protected by the First Amendment. . . . He had no constitutional right to observe the issuance of a traffic ticket or to engage the issuing officer in conversation at that time."

*Id.,* 407 U.S. at 109, 92 S.Ct. at 1956–7.

Thus in *Colten* the Court held only that appellant should have reasonably known that his particular conduct was prohibited. The Court had no occasion to apply the more exacting standard of review appropriate where a statute reaches conduct protected under the first amendment. E.g., *Smith v. Goguen,* supra.

The right to speak and the right to be in a park for social purposes are in general within first amendment protection. See *Coates v. City of Cincinnati,* 402 U.S. 611, 613, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971).[2] The majority, therefore, cannot deny that section 5502 regulates arguably protected

2. In *Coates v. City of Cincinnati,* 402 U.S. 611, 613, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971), the United States Supreme Court struck down a

conduct. On the majority's reading of section 5502, appellant's conviction is upheld on the basis of his speech and his activities in the park. Thus, under *Smith v. Goguen,* supra, the issue is whether, in view of the first amendment, the statute draws "reasonably clear lines" between what is criminal and what is not. *Id.,* 415 U.S. at 574, 94 S.Ct. at 1248.

By prohibiting conduct which "causes or may reasonably be expected to cause . . . serious inconvenience, annoyance or alarm," section 5502 provides to the public insufficient instruction of its scope and accordingly affords to police an undue discretion in ordering groups of persons to disperse. The definition of "disorderly conduct" contained in section 5503 fails to cure the vagueness of section 5502's language. Section 5502 bars disorderly conduct which "causes or may reasonably be expected to cause . . . serious inconvenience, annoyance or alarm." Section 5503 provides as follows:

"(a) Offense defined.—A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

state statute making it a criminal offense for "three or more persons to assemble . . . on any of the sidewalks . . . and thereby conduct themselves in a manner annoying to persons passing by." In discussing the statute's overbreadth, the Court observed:

"[T]he vice of the ordinance lies not alone in its violation of the due process standard of vagueness. The ordinance also violates the constitutional right of free assembly and association. Our decisions establish that mere public intolerance or animosity cannot be the basis for abridgment of these constitutional freedoms. . . . The First and Fourteenth Amendments do not permit a State to make criminal the exercise of the right of assembly simply because its exercise may be 'annoying' to some people. If this were not the rule, the right of the people to gather in public places for social or political purposes would be continually subject to summary suspension through the good-faith enforcement of a prohibition against annoying conduct. And such a prohibition, in addition, contains an obvious invitation to discriminatory enforcement against those whose association together is 'annoying' because their ideas, their lifestyle, or their physical appearance is resented by the majority of their fellow citizens."

*Id.,* 402 U.S. at 615–6, 91 S.Ct. at 1689 (footnotes omitted).

(1) engages in fighting or threatening, or in violent or tumultuous behavior;

(2) makes unreasonable noise;

(3) uses obscene language, or makes an obscene gesture; or

(4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor."

Each of the subsections must, of course, ultimately be viewed in combination with the vague "inconvenience, annoyance, or alarm" language. But even viewed alone, these subsections do not draw acceptably "clear" lines. I do not dispute that the first subsection clearly prohibits fighting. But it cannot be reasonably determined what other particular behavior the terms "threatening" or "tumultuous" subject to sanction. Thus, subsection (1) gives undue discretion to the police and inadequate notice to the public. Similarly, other subsections permit police to decide when a noise is "unreasonable," when conduct or speech is "physically offensive" or what a "legitimate purpose of the actor" is. The public can only guess at the standard these terms imply and hence may be inclined to forego constitutionally protected conduct or speech.

The reference to "obscene language" and "obscene gesture[s]" in subsection (3) presents a special problem. In *Cohen v. California,* 403 U.S. 15, 19–20, 91 S.Ct. 1780, 1785, 29 L.Ed.2d 284 (1971), the Court reversed a conviction for the display in a courthouse corridor of a four-letter expletive on the back of a jacket. The Court observed:

"this case cannot be said to fall within those relatively few categories of instances where prior decisions have established the power of government to deal more comprehensively with certain forms of individual expression simply upon a showing that such a form was employed. This is not, for example, an obscenity case. Whatever else may be necessary to give rise to the States' broader power to prohibit obscene expression, such expression must be, in some significant way, erotic. *Roth v. United States,* 354

U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). It cannot plausibly be maintained that this vulgar allusion to the Selective Service System would conjure up such psychic stimulation in anyone likely to be confronted with Cohen's crudely defaced jacket."

See *State v. Anonymous*, 34 Conn.Sup. 575, 377 A.2d 1342 (1977). Construed in this fashion, the subsection is not vague. But the majority, here, has not adopted the *Cohen* construction. Therefore, the public can only guess what the term "obscene" includes. In the present case the trial judge, in his charge (quoted in the majority opinion), permitted the jury to base its finding of disorderly conduct on the use of "bad language." Appellant, then, was accused and convicted of nothing more than "bad language" and refusing to disperse. The majority's approval of this "bad language" charge is wholly unwarranted, particularly where the record does not reveal what language is claimed to be obscene.

The judgment of sentence should be reversed because of 1) the majority's erroneous interpretation of the statutory language, 2) the absence of a record to support the majority's assumption of its asserted facts and 3) the majority's erroneous holding that the statute is not vague.