981 A.2d 179

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Omar A. OMAR, Appellee**

**Commonwealth of Pennsylvania, Appellant**

v.

**Daniel J. O'Connor, Appellee.**

Supreme Court of Pennsylvania.

Submitted and Argued Dec. 2, 2008.

Decided Oct. 5, 2009.

596

Michael T. Madeira, Esq., Karen Elizabeth Kuebler, Esq., Stephen P. Sloan, Esq., Bellefonte, for the Com. of PA., appellant.

598

Karen Gwyn Muir, Esq., State College, for Omar A. Omar, appellee.

Sean Patrick McGraw, Esq., David R. Crowley, Esq., Bellefonte, for Daniel J. O'Connor, appellee.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY and GREENSPAN, JJ.

## OPINION

Justice BAER.

In these consolidated cases, the Centre County Court of Common Pleas dismissed charges filed by the Commonwealth for violations of the Trademark Counterfeiting Statute, 18 Pa.C.S. § 4119, based on the trial court's prior decision striking the statute as unconstitutionally vague and overbroad. Accordingly, the Commonwealth has filed direct appeals to this Court, which has exclusive jurisdiction over appeals from final orders of the court of common pleas declaring laws of the Commonwealth unconstitutional. 42 Pa.C.S. § 722(7). We conclude that because the statute criminalizes speech protected by the First Amendment to the United States Constitution, it is unconstitutionally overbroad. Accordingly, we affirm the decisions of the Court of Common Pleas of Centre County.

We cannot consider the cases currently under review without first addressing the prior decisions of the Centre County Court of Common Pleas, striking the Trademark Counterfeiting Statute as unconstitutional. In *Commonwealth v. Garrity*, Centre County Crim. No. 1999–2264 (March 27, 2000), the Pennsylvania State University Police arrested James P. Garrity, Jr., for selling t-shirts with the words "Ninety–Eight Degrees" and "Penn State University" on the Penn State Campus during a concert by the band "Ninety–Eight Degrees." The district attorney charged Garrity with violating the Trademark Counterfeiting Statute because "Penn State" was a registered federal trademark. Garrity challenged the constitutionality of the statute claiming it was unconstitutionally vague and overbroad.

After observing that statutes are presumed to be constitutional, the trial court noted that a statute is potentially unconstitutionally overbroad if it punishes constitutionally protected speech. *See DePaul v. Commonwealth*, 600 Pa. 573, 969 A.2d 536, 553 (Pa.2009) ("[T]he U.S. Supreme Court and this Court have recognized that the overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when judged in relation to the statute's plainly legitimate sweep.")(internal quotation marks omitted). The trial court stated that the Trademark Counterfeiting Statute defines the crime as "Any person who knowingly manufactures, uses, displays, advertises, distributes, offers for sale, sells or possesses with intent to sell or distribute any items or services bearing or identified by a counterfeit mark shall be guilty of the crime of trademark counterfeiting." 18 Pa.C.S. § 4119(a).[1] A counterfeit mark is defined by the statute as either "(1) [a]ny unauthorized reproduction or copy of intellectual property" or "(2) [i]ntellectual property affixed to any item knowingly sold, offered for sale, manufactured or distributed or identifying services offered or rendered, without the authority of the owner of the intellectual property." 18 Pa. C.S. § 4119(i). Combining subsections (a) and (i)(1), the court noted, "this statute makes it unlawful to reproduce any trade-

1. In relevant part, the Trademark Counterfeiting Statute provides:
   (a) Offense defined.—Any person who knowingly manufactures, uses, displays, advertises, distributes, offers for sale, sells or possesses with intent to sell or distribute any items or services bearing or identified by a counterfeit mark shall be guilty of the crime of trademark counterfeiting.
   * * * * *
   (i) Definitions.—As used in this section, the following words and phrases shall have the meanings given to them in this subsection: "Counterfeit mark." Any of the following:
      (1) Any unauthorized reproduction or copy of intellectual property.
      (2) Intellectual property affixed to any item knowingly sold, offered for sale, manufactured or distributed or identifying services offered or rendered, without the authority of the owner of the intellectual property.
   "Intellectual property." Any trademark, service mark, trade name, label, term, device, design or word adopted or used by a person to identify that person's goods or services.
   18 Pa.C.S. § 4119.

mark for any *use*, without the express permission of the owner of the intellectual property." *Garrity* Slip Op. at 5 (emphasis in original). The court observed that this prohibition would apply to constitutionally protected activity such as "[w]rit[ing] the words 'Penn State' on a political placard or sign, such as, 'Penn State students for the Constitution.' "[2] *Id.* The court therefore held that the Trademark Counterfeiting Statute is unconstitutionally overbroad and dismissed the charge filed against Garrity for violating the then-unconstitutional statute. Although the Commonwealth initially appealed the March 2000 decision in *Garrity*, it abandoned the appeal, leaving *Garrity* as controlling law in Centre County.

Similarly, in *Commonwealth v. Price*, Centre County No. CP–14–CR–2211–2006 (November 15, 2007), the trial court, with the same trial judge presiding, dismissed charges filed against a defendant under the Trademark Counterfeiting Statute. The court rejected the Commonwealth's argument that other states have upheld similar counterfeit trademark statutes, observing that those statutes did not criminalize the "use" of the trademark.

Currently before this Court is the case of Omar A. Omar. On May 16, 2007, a police officer stopped Appellee Omar for exceeding the speed limit on Route 80 in Centre County. Upon seeing a number of boxes of what appeared to be counterfeit Nike sneakers, the officer arrested Appellee Omar for violation of the Trademark Counterfeiting Statute. Although Appellee Omar challenged the legality of the search and seizure in a motion to suppress, the trial court determined that consideration of the legality of the search was unnecessary given its decision in *Garrity*, followed in *Price*, that the statute was unconstitutional. The court observed that "an unconstitutional statute is ineffective for any purpose; it is as if it were never enacted." Tr. Ct. Slip Op. at 2, quoting *Glen–*

2. Although our focus is upon the criminalization of political speech, the trial court observed that the statute would also criminalize children painting "Penn State" on their tree house, football fans painting "Penn State" on their faces, a gardener spelling out "Penn State" with flowers, and concert promoters printing t-shirts with Penn State to denote the location of a concert. *Id.*

*Gery Corp. v. Zoning Hearing Bd. of Dover Tp.*, 589 Pa. 135, 907 A.2d 1033, 1043 (Pa.2006). Accordingly, finding a defect on the face of the criminal information that prevented prosecution, the court quashed the information and dismissed the charges against Appellee Omar.

In the other case consolidated for appeal before this Court, Appellee Daniel J. O'Connor was arrested for selling hats bearing the Penn State logo outside Beaver Stadium on the Penn State campus. Appellee O'Connor was charged with violating the Trademark Counterfeiting Statute because he did not have the appropriate approval to use the Penn State name and logo on the hats. Appellant O'Connor filed a motion to quash the information based upon the trial court's prior determination that the statute was unconstitutional. As in Appellee Omar's case, the trial court dismissed the charges.

The Commonwealth now appeals the decisions dismissing the charges based upon the trial court's conclusion that the statute is unconstitutionally vague and overbroad.[3] Given the trial court's holding of unconstitutionality, this Court noted probable jurisdiction and consolidated the Commonwealth's appeals relating to Appellees Omar and O'Connor.

█ The Commonwealth asserts that the trial court erred when it concluded that the Trademark Counterfeiting Statute was unconstitutional. The Commonwealth observes that courts must presume that statutes are constitutional, and strike them as unconstitutional only if the statute clearly, palpably, and plainly violates the Constitution. *See Commonwealth v. Davidson*, 595 Pa. 1, 938 A.2d 198, 207 (Pa.2007). Accordingly, the Commonwealth emphasizes the heavy burden of proof placed upon those challenging the constitutionality of a statute. The Commonwealth correctly notes that a statute is unconstitutionally overbroad only if the statute criminalizes a substantial amount of constitutionally protected speech. *See DePaul*, 969 A.2d at 553.

3. Given that we determine that the statute is unconstitutionally overbroad, we need not address the secondary holding that the statute is also unconstitutionally vague.

The Commonwealth asserts that the Trademark Counterfeiting Statute is not unconstitutionally overbroad, claiming that it is limited to those persons with the intent to sell or distribute items with counterfeit trademarks, and thus that the statute does not reach a substantial amount of constitutionally protected speech. The Commonwealth observes that the trial court's analysis of unconstitutionality centered on the inclusion of the word "use" in the definition of the offense of trademark counterfeiting. The Commonwealth, however, asserts that the statute only applies when the counterfeit trademark is used "with intent to sell or distribute." Implicitly, the Commonwealth is contending that the phrase "with intent to sell or distribute" applies not only to the word "possess," which immediately proceeds the phrase in subsection (a), but also to the entire list of verbs in subsection (a), including "use." To support its argument that the breadth of the statute is limited by intent, the Commonwealth relies upon the Superior Court's decision in *Commonwealth v. George*, 878 A.2d 881, 886 (Pa.Super.2005), in which the court emphasized the defendant's intent to sell.[4] In *George*, the court rejected the defendant's sufficiency of the evidence argument where the defendant claimed that the statute required possession of twenty-five counterfeit items with the intent to sell. Instead, the court observed that the statute merely provided that the intent to sell could be presumed from the possession of twenty-five items.[5]

Moving beyond the words of the currently enacted statute, the Commonwealth relies on a proposed amendment to the statute, statutes from our sister states, and additional provi-

4. The Commonwealth mistakenly credits this Court with the decision in *George*. Indeed, the Commonwealth asserts, "The Supreme Court of Pennsylvania has twice reviewed the Counterfeiting statute, in *George* and *Sowf*, 860 A.2d 154 (Pa.Super.2004),] and not once did the court question the constitutionality of the statute." Brief of Commonwealth in O'Connor at 9. We respectfully note that the Superior Court, rather than this Court, issued the cited decisions, and appropriately did not raise any issues of constitutionality *sua sponte*.

5. The statute provides for the following presumption: "A person having possession, custody or control of more than 25 items bearing a counterfeit mark may be presumed to possess said items with intent to sell or distribute." 18 Pa.C.S. § 4119(b).

sions in the Crimes Code. The proposed amendment overtly incorporates the concept of intent to deceive into the definition of a counterfeit mark.[6] As detailed below, the Commonwealth directs our attention to cases in other states applying similar trademark counterfeiting statutes. Additionally, the Commonwealth relies upon the default mens rea provided in the Crimes Code, 18 Pa.C.S. § 302(c), which provides, "When the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly or recklessly with respect thereto." It therefore contends that the statute only applies to those intending to sell items with counterfeit marks. Finally, the Commonwealth asserts that even if protected behavior might be prohibited by the statute, we should overlook the unconstitutionality based upon the provision in the Crimes Code allowing courts to dismiss charges where the conduct is *de minimis* or does not involve the behavior that the statute intends to prevent. *See* 18 Pa.C.S. § 312.[7]

**6.** The proposed amendment substitutes the following definition of "counterfeit mark," thus eliminating the need for the problematic definition of "intellectual property" in the current statute:

A spurious mark that meets all of the following:

(1) Is applied to, used or intended to be used in connection with an item or service.

(2) Is identical with or substantially indistinguishable from a mark registered and in use in this Commonwealth, any other state or on the principal register in the United States Patent and Trademark Office, whether or not the person knew the mark was registered.

(3) The application of which is either:

(i) likely to cause confusion, to cause mistake or to deceive; or

(ii) otherwise intended to be used on or in connection with the item or service for which the mark is registered.

Pennsylvania Senate Bill No. 895 of 2007. The proposed amendment was referred to the Judiciary Committee on June 6, 2007. As of July 31, 2009, the website of the General Assembly does not indicate any further action on the amendment.

**7.** The *De minimis* infractions statute provides in relevant part:

(a) General rule.—The court shall dismiss a prosecution if, having regard to the nature of the conduct charged to constitute an offense and the nature of the attendant circumstances, it finds that the conduct of the defendant:

(1) was within a customary license or tolerance, neither expressly negatived by the person whose interest was infringed nor inconsistent with the purpose of the law defining the offense;

Echoing the trial court, Appellees argue that "[b]y criminalizing the mere 'use, display . . . [or] distribute[ion]' of items bearing a counterfeit mark, and defining 'counterfeit mark' broadly to include 'any term or word,' the Trademark Counterfeiting statute is easily applied to a broad array of constitutionally protected activity." Brief for O'Connor at 4. Appellees note that the use of the word "Nike" on a sign at a protest rally, such as "Nike uses sweatshop labor" would fall within the reach of the Trademark Counterfeiting Statute because the activity would involve the unauthorized use of a word or term used by another to identify goods or services. Indeed, Appellees contend that the brief they submitted in this case violated the Trademark Counterfeiting Statute because they distributed (to the Court and the parties) an item containing an unauthorized reproduction of words, such as Nike and Penn State, that are used by other entities to identify goods or services.

Appellees also rebut the argument that the inclusion of the phrase "with intent to sell or distribute" applies to all the verbs in the subsection (a) of the statute including "use" and "display." Appellees contend that the phrase only applies to the verb "possess," which immediately precedes the phrase, in accordance with the standards of statutory construction, citing *Commonwealth v. Packer*, 568 Pa. 481, 798 A.2d 192, 198 (Pa.2002) (observing "the well established cannon of construction that courts should generally apply qualifying words or phrases to the words immediately preceding them"). They further note that applying the phrase to all the verbs would lead to the absurd result that the statute would prohibit individuals from selling with intent to sell and from distributing with intent to distribute.

> (2) did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or
> (3) presents such other extenuations that it cannot reasonably be regarded as envisaged by the General Assembly or other authority in forbidding the offense.
>
> 18 Pa.C.S. § 312.

■ As the constitutionality of a statute is a pure question of law, our standard of review is *de novo* and our scope of review is plenary. *See Davidson*, 938 A.2d at 203. Moreover, we presume that statutes are constitutional and require those challenging the constitutionality of a statute to demonstrate that it clearly, plainly, and palpably violates the constitution. *DePaul*, 969 A.2d at 545–46. Although we must presume that the legislature does not intend to violate the Constitution, we do not invoke that presumption where the language is clear. 1 Pa.C.S. §§ 1921, 1922. *Cf. Commonwealth ex rel. Mac Callum v. Acker*, 308 Pa. 29, 162 A. 159, 160 (Pa.1932) ("Where the Constitution has expressed its purpose in clear and explicit language, a court cannot delimit the meaning of the words used by reference to a supposed intent which might be evoked from it, or from the debates before the constitutional convention."). Our rules of statutory construction provide, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Moreover, "[w]ords and phrases shall be construed according to rules of grammar." 1 Pa.C.S. § 1903.

■ An overbreadth challenge is generally limited to issues falling under the First Amendment of the United States Constitution, protecting the right to free speech. *See Davidson*, 938 A.2d at 208. We have recognized that "the Constitution provides significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere." *Id.* (internal quotations omitted). When protected expression, such as political speech, is at issue, "both the U.S. Supreme Court and this Court have recognized that the overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when judged in relation to the statute's plainly legitimate sweep." *DePaul*, 969 A.2d at 553 (internal quotation marks omitted). "[I]t has been the judgment of this Court that the possible harm to society in permitting some unprotected speech to go unpunished is outweighed by the possibility that protected

speech of others may be muted and perceived grievances left to fester because of the possible inhibitory effects of overly broad statutes." *Commonwealth v. DeFrancesco,* 481 Pa. 595, 393 A.2d 321, 329 (Pa.1978). Accordingly, a litigant asserting an overbreadth challenge is not required to demonstrate that the statute violated his own protected speech, but instead may prove a statute's unconstitutionality by demonstrating that "the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Davidson,* 938 A.2d at 208.

■■■ The standard for determining whether a statute is overbroad is well established:

A statute is unconstitutionally overbroad only if it punishes lawful constitutionally protected activity as well as illegal activity. Thus, in determining whether a statute is unconstitutional due to overbreadth, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. The overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep. Consequently, if a statute's overbreadth is substantial, it may not be enforced against anyone until it is narrowed to reach only unprotected activity.

*Id.* at 208 (internal citations and quotation marks omitted).

■■■ We agree with the Commonwealth that the likely legislative intent behind the Trademark Counterfeiting Statute was to prohibit the deceptive, unauthorized use of a trademark for profit, and that it was not intended to prohibit the use of trademarked words in constitutionally protected speech. Although the statute has a laudable and constitutional purpose, the plain language of the statute as written prohibits a much broader range of uses of trademarks, many of which involve constitutionally protected speech.

In relevant part, the statute provides:

§ 4119. Trademark counterfeiting

(a) Offense defined.—Any person who knowingly manufactures, uses, displays, advertises, distributes, offers for sale,

sells or possesses with intent to sell or distribute any items or services bearing or identified by a counterfeit mark shall be guilty of the crime of trademark counterfeiting.

    \*      \*      \*      \*      \*      \*

(i) Definitions.—As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

"Counterfeit mark." Any of the following:

(1) Any unauthorized reproduction or copy of intellectual property.

(2) Intellectual property affixed to any item knowingly sold, offered for sale, manufactured or distributed or identifying services offered or rendered, without the authority of the owner of the intellectual property.

"Intellectual property." Any trademark, service mark, trade name, label, term, device, design or word adopted or used by a person to identify that person's goods or services.

18 Pa.C.S. § 4119.

Although the Commonwealth argues that the statute only prohibits the use of "counterfeit marks" when the user intends to sell or distribute the product deceptively, the statute defines "counterfeit mark" broadly to include "[a]ny unauthorized reproduction or copy of intellectual property," where "intellectual property" is defined by the statute to include "[a]ny trademark, service mark, trade name, label, *term,* device, design or *word* adopted or used by a person to identify that person's goods or services." 18 Pa.C.S. § 4119(i) (emphasis added). Therefore, any unauthorized use of a "term" or "word" that is engaged by another person to identify that person's goods or services is a "counterfeit mark." Accordingly, the definition of intellectual property criminalizes not only the use of the trademark, which would include the stylized logo or name but also the mere word, without regard to font or color. When the relevant definitions are inserted into the definition of the offense, the statute criminalizes the use of any items bearing an unauthorized reproduction of terms or words

used by a person to identify that person's goods or services. 18 Pa.C.S. § 4119(a), (i). As highlighted by the trial court, the statute, therefore, unconstitutionally prohibits protected speech, including the use of words on a sign praising or protesting any entity with a trademarked name, including Penn State. Taken to the extreme, even our use of the words "Nike" and "Penn State" in this opinion without the permission of the company or the university would fall under the current definition of a counterfeit mark. Clearly, the statute prohibits a substantial amount of protected speech. *Davidson*, 938 A.2d at 208.

We must decline the Commonwealth's attempt to apply the limiting phrase "with intent to sell or distribute" to the entire list of verbs in the definition of the offense in subsection (a), which would properly limit the reach of the statute to unprotected activity. The offense, again, is defined as "Any person who knowingly manufactures, uses, displays, advertises, distributes, offers for sale, sells or possesses *with intent to sell or distribute* any items or services bearing or identified by a counterfeit mark shall be guilty of the crime of trademark counterfeiting." 18 Pa.C.S. § 4119(a) (emphasis added). Applying the "last antecedent" rule of grammar, the phrase "with intent to sell and distribute," applies solely to the verb "possesses," which immediately precedes that clause, such that the statute prohibits the possession of a counterfeit trademark item with the intent to sell or distribute that item. *Packer*, 798 A.2d at 198 (observing "the well established cannon of construction that courts should generally apply qualifying words or phrases to the words immediately preceding them"). Although the last antecedent rule is not absolute, it "generally may be applied in absence of evidence of some contrary purpose." *Pennsylvania Dept. of Banking v. NCAS of Delaware, LLC*, 596 Pa. 638, 948 A.2d 752, 760–761 (Pa. 2008). Here, the structure of the sentence demonstrates that the rule should apply because otherwise the statute would prohibit the selling of items with the intent to sell and the distribution of items with the intent to distribute, which results in grammatically absurd redundancy. Therefore, we

cannot construe the statute to be constitutional without doing violence to the sentence as written by the legislature.

We conclude that the Commonwealth's other arguments also cannot save the statute by allowing us to incorporate the intent to sell or distribute into the definition of the offense. A review of the Superior Court's decision in *George*, relied upon by the Commonwealth to support the significance of the intent to sell or distribute, reveals that that case did not consider the constitutionality of the statute, and only considered the intent of the defendant in regard to whether there was sufficient evidence of "possession with intent to sell or distribute," in a case involving possession, not use. *George*, 878 A.2d 881. Additionally, while the proposed amendment cited by the Commonwealth would narrow the reach of the Trademark Counterfeiting Statute, we cannot consider the constitutionality of the proposed amendatory language until it is enacted into law. While we acknowledge that the Crimes Code provides a default *mens rea* in 18 Pa.C.S. § 302(c), the default provision does not speak to what conduct a person must commit intentionally, knowingly, or recklessly, and in no way mentions the intent to sell or deceive. Finally, we find no comfort in the existence of 18 Pa.C.S. § 312, providing for the dismissal of *de minimis* infractions, as the concern of our overbreath jurisprudence is not directed only at the risk of prosecution under overly broad statutes but also at the chilling of speech in fear of prosecution. *Davidson*, 938 A.2d at 208. Our citizens are provided no guarantee that a court will find that the *de minimis* statute applies to their use of "counterfeit marks."

We additionally can find no balm for the unconstitutionality of Pennsylvania's Trademark Counterfeiting Statute in the statutes of our sister states cited by the Commonwealth. The Commonwealth looks to the Florida statute, but fails to note that the statute has since been repealed, effective October 1, 2008. Fla. Stat. § 831.05.[8] The Commonwealth also relies

---

8. The Florida Statute provided:

Whoever *knowingly sells or offers for sale,* or knowingly purchases and keeps or has in his or her possession, *with intent that the same shall be sold* or disposed, or vends any goods having thereon a forged

upon the Oregon trademark counterfeiting statute, but fails to observe that the plain language of that statute limits the reach of the criminalization to those incidents where the person acts "knowingly and with intent to sell or distribute." [9] The Commonwealth additionally compares Pennsylvania's statute to that of Texas [10] and Colorado,[11] but fails to indicate that the cases cited as applying those statutes did not speak to the constitutionality of the statutes. It additionally observes that the District of Columbia and Maryland have trademark counterfeiting statutes that have not been chal-

> or counterfeit trademark, or who *knowingly sells or offers for sale* any service which service is sold in conjunction with a forged or counterfeit service mark, of any person, entity, or association, knowing the same to be forged or counterfeited, shall be guilty of the crime of *selling or offering for sale* counterfeit goods or services.
>
> Fla. Stat. § 831.05 (emphasis added). Moreover, we note that this statute unequivocally applies only to items intended for sale, where as the Pennsylvania statute does not make that clear through the plain language of the statute.

9. The Oregon statute provides:

> A person commits trademark counterfeiting *if the person knowingly and with the intent to sell or distribute and without the consent of the registrant* uses, displays, advertises, distributes, offers for sale, sells or possesses any item that bears a counterfeit of a mark or any service that is identified by a counterfeit of a mark registered under this chapter or registered under this chapter or registered under 15 U.S.C. 1052 with knowledge that the mark is counterfeit.
>
> Or.Rev.Stat. § 647.135 (emphasis added).

10. Texas criminalizes the following behavior:

> A person commits an offense if the person intentionally manufactures, displays, advertises, distributes, offers for sale, sells, or possesses with intent to sell or distribute a counterfeit mark or an item or service that:
> (1) bears or is identified by a counterfeit mark; or
> (2) the person knows or should have known bears or is identified by a counterfeit mark.
>
> Tex. Penal Code § 32.23(b).

11. The Colorado statute criminalizes the following behavior:

> A person commits trademark counterfeiting if such person intentionally manufactures, displays, advertises, distributes, offers for sale, sells, or possesses with intent to sell or distribute marks, goods, or services that the person knows are, bear, or are identified by one or more counterfeit marks and has possession, custody, or control of more than twenty-five items bearing a counterfeit mark.
>
> Colo.Rev.Stat. § 18-5-110.5.

lenged on constitutional grounds.[12] Moreover, the statutes cited by the Commonwealth do not criminalize the "use" of items with counterfeit trademarks, which was the primary constitutional flaw as determined by the trial judge, given that "use" would encompass the use of the counterfeit trademark on a protest sign or other protected activity.[13]

Although we have no doubt that that General Assembly did not intend to criminalize the use of terms or words absent intent to profit from the sale of counterfeit goods, we are bound by the language as enacted, which criminalizes a substantial amount of protected speech.[14] *Davidson*, 938 A.2d at 208. Accordingly, we affirm the decision of the Centre County Court of Common Pleas striking 18 Pa.C.S. § 4119 as unconstitutionally overbroad.

**12.** The District of Columbia statute provides:

A person commits the offense of counterfeiting if such person willfully manufactures, advertises, distributes, offers for sale, sells, or possesses with intent to sell or distribute any items, or services bearing or identified by a counterfeit mark. There shall be a rebuttable presumption that a person having possession, custody, or control of more than 15 items bearing a counterfeit mark possesses said items with the intent to sell or distribute.

D.C.Code § 22–902. The Maryland statute provides:

A person may not willfully manufacture, produce, display, advertise, distribute, offer for sale, sell, or possess with the intent to sell or distribute goods or services that the person knows are bearing or are identified by a counterfeit mark.

MD Code, Criminal Law, § 8–611.

**13.** We acknowledge that the Oregon statute does criminalize the "use" of an item with a counterfeit mark. However, unlike Pennsylvania's statute, the Oregon statute plainly limits its reach to those persons who use the counterfeit trademark knowingly and with intent to sell. See *supra* at 188 n. 9.

**14.** With all due respect to the dissenting justices, we fail to see the relevance of our finding of ambiguity in *Malt Beverages Distribs. Ass'n v. Pa. Liquor Control Bd.*, 974 A.2d 1144, 2009 WL 1652854 (Pa.2009), given the different statutory language and grammatical structures in that case compared to the language and structures at issue in this case. For the reasons set forth in this decision and eloquently expressed in the Chief Justice's concurring opinion, we find the plain language of the Trademark Counterfeiting Statute to violate the First Amendment. It is not the role of this Court to redraft clear language even with the salutary purpose of correcting an unconstitutional criminal provision.

Chief Justice CASTILLE, Justice TODD and Justice McCAFFERY join the opinion.

Chief Justice CASTILLE files a concurring opinion.

Justice EAKIN files a dissenting opinion.

Justice GREENSPAN files a dissenting opinion.

Justice SAYLOR dissents.

Chief Justice CASTILLE, Concurring.

I join the Majority Opinion. I write separately to make the following observations.

The tension between the Majority Opinion and the Dissenting Opinion of Madame Justice Greenspan, in my view, rests in the fact that no person could rationally doubt that trademark counterfeiting is a serious offense against the laws of this Commonwealth that is worthy of the General Assembly's exercise of its police powers. Further exacerbating the tension is that, notwithstanding the facial deficiencies of the statute, appellees were engaged in the very sort of profiteering activity that the statute unquestionably could properly target. *See* Dissenting Op. of Greenspan, J. at 626, 981 A.2d at 198 ("Clearly, the conduct of these Appellees was a violation of Nike and Penn State's trademarks, and Appellees' behavior was illegal. That Appellees should have their convictions overturned due to overbreadth of the Statute ... has an aura of injustice.").

If the law were such that persons properly ensnared by this statute lacked standing to bring facial challenges,[1] the dispute here would be avoidable. But, as I understand controlling law from the U.S. Supreme Court, in First Amendment cases, even unquestioned scoundrels are permitted to forward facial challenges—essentially as faux, vicarious champions of the

---

1. Generally speaking, constitutional rights cannot be asserted vicariously. *See Broadrick v. Oklahoma*, 413 U.S. 601, 610, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) ("Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court.").

rights of others not before the court who have refrained from constitutionally protected speech or expression due to the very existence of the statute. *Broadrick v. Oklahoma*, 413 U.S. 601, 612, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) ("[T]he Court has altered its traditional rules of standing to permit—in the First Amendment area—attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity."); *accord Commonwealth v. Davidson*, 595 Pa. 1, 938 A.2d 198, 208 (2007).[2]

And so we have no choice but to accept this litigation as it is presented. I recognize the force of the concern expressed in Justice Greenspan's Dissenting Opinion, which has marshaled a substantial argument in favor of a finding that the General Assembly meant to criminalize "only the **deceptive** use of a recognized word or mark in the context of **a sale or distribution.**" Dissenting Op. of Greenspan, J. at 621, 981 A.2d at 195. But the argument so forcefully made relies on nontextual sources, in my judgment. And, in the criminal arena in particular, where we are construing the purported criminal reach of a statute, and where notice of what is criminalized is essential, the proper starting point is the language of the statute. As the U.S. Supreme Court has explained:

**2.** Interestingly, the overbreadth doctrine does not always apply in commercial speech cases. As the U.S. Supreme Court has explained, "[a]lthough it is true that overbreadth analysis does not normally apply to commercial speech, that means only that a statute whose overbreadth consists of unlawful restriction of commercial speech will not be facially invalidated on that ground—our reasoning being that commercial speech is more hardy, less likely to be 'chilled,' and not in need of surrogate litigators." *Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 481, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989) (citations omitted). However, even where the principal attack is the application of a statute to commercial speech, if "the alleged overbreadth ... consists of its application to non-commercial speech, [ ] that is what counts," *id.*, and that is the scenario before this Court today, *see* Majority Op. at 604, 981 A.2d at 184 (noting appellees' argument that "the use of the word 'Nike' on a sign at a protest rally, such as 'Nike uses sweatshop labor' would fall within the reach of the Trademark Counterfeiting Statute because the activity would involve the unauthorized use of a word or term used by another to identify goods or services").

Courts in applying criminal laws generally must follow the plain and unambiguous meaning of the statutory language.... This proposition is not altered simply because application of a statute is challenged on constitutional grounds. Statutes should be construed to avoid constitutional questions, but this interpretative canon is not a license for the judiciary to rewrite language enacted by the legislature.

*United States v. Albertini*, 472 U.S. 675, 680, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985); *accord Heller v. Frankston*, 504 Pa. 528, 475 A.2d 1291, 1296 (1984).

Respectfully, in my judgment, this case does not present, as the Dissenting Opinion suggests, merely a poorly drafted statute. *See* Dissenting Op. of Greenspan, J. at 615, 981 A.2d at 191 (arguing that "[t]his Court should not declare a criminal statute to be unconstitutional under the void-for-vagueness or overbreadth standards merely because the drafters utilized clumsy grammar, as is the case here"). As the Majority Opinion determines, "the plain language of the statute as written" (Majority Op. at 606, 981 A.2d at 186) prohibits a substantial amount of constitutionally protected speech when judged in relation to the statute's legitimate sweep. *See id.* at 607–09, 981 A.2d at 186–87 (describing broad definitions of relevant terms set forth in statute and concluding that "[w]hen the relevant definitions are inserted into the definition of the offense, the statute criminalizes the use of any items bearing an unauthorized reproduction of terms or words used by a person to identify that person's goods or services"). The Dissenting Opinion finds "latent" ambiguity (Dissenting Op. of Greenspan, J. at 620, 981 A.2d at 195) only by looking to the structure and supposed purpose and intent of the statute, in contravention of Section 1921 of our Statutory Construction Act, *see* 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). Nevertheless, the statute, on its face, is unambiguous, and we may not disregard those obvious deficiencies to essentially re-write the statute so as to keep trademark counterfeiting illegal until

the General Assembly manages to define the offense in a constitutional manner. Accordingly, I am constrained to agree that the statute is unconstitutionally overbroad, and I join the Majority Opinion.

Justice EAKIN, Dissenting.

Whilst I join Madame Justice Greenspan's dissent concluding Pennsylvania's Trademark Counterfeiting Statute, 18 Pa. C.S. § 4119, is not so vague and overbroad as to be deemed unconstitutional, I write separately because of references contrasting this statute to our recent holding in *Malt Beverages Distributors Association v. Pennsylvania Liquor Control Board*, 974 A.2d 1144 (Pa.2009). In her dissent, Madame Justice Greenspan states this Court properly found the statute at issue in *Malt Beverages* to be ambiguous, yet now refuses to find ambiguity in the current statute, which I find to contain even more tenuous language. Dissenting Op., at 617–18, 981 A.2d at 193–94. I dissented in *Malt Beverages*, believing the statute there was not ambiguous. Therefore, I cannot agree with statements suggesting this Court properly found statutory ambiguity in *Malt Beverages*. In all other aspects, I join Madame Justice Greenspan's dissent.

Justice GREENSPAN, Dissenting.

Although I agree with my colleagues that Pennsylvania's Trademark Counterfeiting Statute, 18 Pa.C.S. § 4119 (the "Statute"), is inartfully drafted, I cannot conclude that the Statute is so vague and overbroad that it ought to be deemed unconstitutional. This Court should not declare a criminal statute to be unconstitutional under the void-for-vagueness or overbreadth standards merely because the drafters utilized clumsy grammar, as is the case here. This Court has an obligation to interpret a statute in a constitutional manner wherever possible. *DePaul v. Commonwealth*, 600 Pa. 573, 969 A.2d 536, 537 n. 5 (2009) ("we are required, whenever possible, to construe a statute in a manner that upholds its constitutionality"); *Commonwealth v. Pure Oil Co.*, 303 Pa. 112, 154 A. 307, 309 (1931) (holding that a court must, if reasonably possible, construe a statute so as to find the statute

constitutional). Here, the majority fails to follow this clear mandate and the majority opinion is, in my view, inconsistent with this Court's recent holding in the similar case of *Malt Beverages Distribs. Ass'n v. Pa. Liquor Control Bd.*, 974 A.2d 1144 (Pa.2009).[1] In my opinion, the majority's failure in this case sets a dangerous precedent whereby a grammatical mistake by the General Assembly will result in a criminal statute, and convictions thereunder, being overturned. On this basis, I respectfully dissent.

It is the role of the Court to determine constitutionality and the role of the General Assembly to determine what particular language should be used to achieve its goal. As this Court noted in *Reichley v. North Penn Sch. Dist.*:

> The adversarial judicial system is not an appropriate forum for analyzing whether this legislation works well or poorly, as intended or in ways unforeseen. If a statute does not work as expected, the legislature is the appropriate body to make the judgment and enact corrective legislation. That body has the competence to weigh the policy considerations and legislate initially and that body has the competence to reassess those considerations, the efficacy of the initial legislation, and the wisdom of continuing thereunder or changing course.

533 Pa. 519, 626 A.2d 123, 129 (1993). It is a basic tenet of statutory construction that, when evaluating the constitutionality of a statute, a court must presume that the General Assembly did not intend to violate the Constitution of the United States or of Pennsylvania when it promulgated the statute. 1 Pa.C.S. § 1922(3); *see also Pennsylvania Tpk. Comm'n v. Commonwealth*, 587 Pa. 347, 899 A.2d 1085, 1094 (2006) (holding that legislation duly enacted by the General Assembly will not be declared unconstitutional unless the legislation clearly, palpably and plainly violates the Pennsylva-

---

**1.** Although *Malt Beverages* differs from the instant case in that *Malt Beverages* did not involve a constitutional challenge, that case and the language of the statute raised therein present issues similar to those presented in the instant case. Given the similarity of the question of statutory construction in *Malt Beverages,* its precedent should be followed in the instant case. *See* my discussion infra at n. 4.

nia and United States Constitutions). Again then, this Court should, whenever possible, construe a statute to uphold its constitutionality. *DePaul,* 969 A.2d at 546 (citing *In re William L.,* 477 Pa. 322, 383 A.2d 1228, 1231 (1978)). In my opinion, this principle is even more important in the context of evaluating a criminal statute which will be struck down if the statute is found to be unconstitutional.

Any doubt as to the constitutionality of a statute is to be resolved in favor of finding the statute to be constitutional. *Commonwealth v. Bullock,* 590 Pa. 480, 913 A.2d 207, 212 (2006) (holding that the Crimes Against the Unborn Child Act was neither unconstitutionally vague nor overbroad); *Reichley,* 626 A.2d at 128 (reversing the order of the trial court holding Act 195 unconstitutional); *see also Colville v. Allegheny County Ret. Bd.,* 592 Pa. 433, 926 A.2d 424, 433 (2007) (noting that a reviewing court is precluded from construing a statute in a manner that would produce an absurd or unreasonable result). As a result of this presumption, the party challenging the constitutionality of the statute bears the significant burden to prove that the statute is unconstitutional. *Harrisburg Sch. Dist. v. Zogby,* 574 Pa. 121, 828 A.2d 1079, 1087 (2003); *Commonwealth v. Davidson,* 595 Pa. 1, 938 A.2d 198, 207 (2007). A party may successfully argue that a statute is unconstitutional by demonstrating that the statute is either void for vagueness or overbroad.

Under the void-for-vagueness standard, a statute will be found unconstitutional *only* if the statute is so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application. *Commonwealth v. Craven,* 572 Pa. 431, 817 A.2d 451, 454 (2003); *Commonwealth v. Cotto,* 562 Pa. 32, 753 A.2d 217, 220 (2000). A statute will not be found unconstitutional if the statute defines the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited, and in a manner that does not encourage arbitrary and discriminatory enforcement. *Davidson,* 938 A.2d at 207. A statute will not be deemed unconstitutionally vague if its terms, when read in context, are sufficiently specific. *Cotto,* 753 A.2d at 220 (citing

*Commonwealth v. Hendrickson*, 555 Pa. 277, 724 A.2d 315 (1999) and concluding that the Juvenile Act was constitutional because, when read in the context of its elaborated legislative purpose, its language was not vague). That the General Assembly could have chosen clearer and more precise language equally capable of achieving the end which it sought does not mean that the statute which it in fact drafted is unconstitutionally vague. *United States v. Powell*, 423 U.S. 87, 94, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975).

Under the overbreadth standard, a statute will be found unconstitutionally overbroad only if it punishes lawful constitutionally protected activity as well as illegal activity.[2] *Davidson*, 938 A.2d at 208. Thus, in determining whether a statute is unconstitutional due to overbreadth, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. *Commonwealth v. Ickes*, 582 Pa. 561, 873 A.2d 698, 702 (2005) (*citing Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982)). The overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep. *Davidson*, 938 A.2d at 208. The United States Supreme Court has described application of the overbreadth doctrine as "strong medicine," only to be "employed sparingly" and as a "last resort."[3] *Id.* (*citing Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)).

The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S. § 1921(a); *Davidson*, 938 A.2d at 216. Where a statute is ambiguous, a Court *must* consider both the statute's plain language *and* the legislative intent underpinning the language. 1 Pa.C.S. § 1921(c); *see also Carrozza v.*

**2.** A challenge to the constitutionality of a statute under the "overbreadth" doctrine is generally limited to a claim that the statute violates the First Amendment. *Davidson*, 938 A.2d at 208 (citing *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)).

**3.** Application of the doctrine is especially inappropriate here because a remedial bill meant to correct any alleged overbreadth in the Statute is pending before the General Assembly.

*Greenbaum*, 591 Pa. 196, 916 A.2d 553, 564–65 (2007) (listing factors that can be utilized to glean the legislative intent underpinning a statute); *Pennsylvania Fin. Responsibility Assigned Claims Plan v. English*, 541 Pa. 424, 664 A.2d 84, 87 (1995) (noting that where a statute is unclear or susceptible to differing interpretations, courts must look to legislative intent).

Turning to a close reading of the Statute, the majority and concurrence conclude that the Statute is not ambiguous. They therefore decline to evaluate anything other than the plain meaning of the Statute's language. I disagree with their conclusion vis-à-vis ambiguity and with their interpretation of the Statute's language. As the litigants' varying interpretations of the Statute demonstrate, the Statute *is* subject to various interpretations. The Statute is not, as the majority and concurrence suggest, clear on its face. Depending on how the Statute is read, it may prohibit a broad class of activity or it may prohibit only the aforementioned activity in the context of a sale or distribution.

The question of statutory construction presented in this case is not unlike the question presented to this Court in the recent *Malt Beverages* case.[4] In *Malt Beverages*, this Court found ambiguity in a statute that contained a clause that could be read in either a limiting or an expansive manner. 974 A.2d at 1152 ("The crux of the dispute focuses on whether the two types of beer sales contemplated in Section 102—the sale of beer for on-site consumption and the sale of beer for carry-out purchases—are independent alternatives or whether the sale of beer for takeout is contingent upon the sale of beer for consumption on the premises of the facility."). Because the

4. In *Malt Beverages*, the litigants argued that a statute was ambiguous and subject to different interpretations but there was no constitutional challenge to a criminal statute. To the contrary, that case involved a mere divergence as to how a civil statute should be applied. In my opinion, the instant case is one of even greater gravity than *Malt Beverages*. Here, the challengers ask this Court to declare a criminal statute unconstitutional. If the challenge in *Malt Beverages* and the language of the statute at issue therein were sufficient to justify a finding of ambiguity in that case, a similar result is required in the instant case where the stakes are even higher.

statute in *Malt Beverages* was subject to two different interpretations, the Court properly held that the statute was ambiguous and utilized legislative intent to interpret the statute. *Id.* at 1153 ("we find that each party's interpretation of the statutory language is plausible and, therefore, the statute is ambiguous. As in all cases where a latent ambiguity in the statute exists, we resort to the canons of statutory construction to discover the Legislature's intent.").

The majority rejects such an approach here, even in the face of far more ambiguous language than was present in *Malt Beverages.* Like the statute at issue in *Malt Beverages* the Statute here is subject to at least two reasonable interpretations and is therefore ambiguous. Due to this ambiguity, we ought not to evaluate the language of the Statute in a vacuum but instead should evaluate the language of the Statute in light of the General Assembly's intent. *See Pennsylvania Fin. Responsibility Assigned Claims Plan,* 664 A.2d at 87.[5] If the challenge in *Malt Beverages* was sufficient to justify a finding of ambiguity, surely a similar finding is mandated here, in the context of a constitutional challenge to a criminal statute.

Pursuant to the language of Section 4119(a) of the Statute, any person who knowingly "manufactures, uses, displays, advertises, offers for sale, sells or possesses with intent to sell or distribute any items or services bearing or identified by a counterfeit mark" shall be guilty of the crime of trademark counterfeiting. 18 Pa.C.S. § 4119(a). Section 4119(i) of the Statute defines a "counterfeit mark," in part, as any unauthorized reproduction or copy of a trademark. 18 Pa.C.S. § 4119(i).[6] Section 4119(b) of the Statute states that a person

5. I am mindful of the general rule of construction that where the words of a statute are "clear and free from all ambiguity, the letter of [the statute] is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Notwithstanding the general rule, where, as here, the words of a statute are ambiguous a court may consider extrinsic evidence to determine legislative intent. 1 Pa.C.S. § 1921(c).

6. The Statute contains several relevant definitions. The term "counterfeit mark" is defined to include the following:

   (1) Any unauthorized reproduction or copy of intellectual property.

who possesses more than 25 counterfeit items may be presumed to possess them with the intent to sell or distribute. 18 Pa.C.S. § 4119(b).

The majority applies a literal reading to the Statute, declares the Statute's language to be unambiguous, and therefore does not evaluate legislative intent. The concurrence reaches the same conclusion. I cannot agree with their approach. This is not a case where a litigant has asserted ambiguity in a single, undefined term. Nor is this a case where ambiguity is alleged but two reasonable persons would not actually differ as to the interpretation of a statute. The instant case is one involving a complex Statute with unusual grammar and a clause that can be read either to limit the entirety of a statutory provision or to limit only one listed action. Here, the inartfully drafted Statute is indeed ambiguous and the latent ambiguity exists in the very structure of the Statute. There are, simply, two reasonable ways in which to read Section 4119(a) of the Statute. Therefore, an analysis of legislative intent is necessary to prevent an overly literal interpretation of the Statute contrary to the drafter's intent and to prevent an improper invalidation of a criminal statute. 1 Pa.C.S. § 1921(b).

The majority, by its literal reading, rules that the General Assembly intended to prohibit any mere use of a recognized word or mark. To my mind, this reading is flawed. The legislative intent behind the Statute is clear. The General Assembly intended to criminalize only the *deceptive* use of a recognized word or mark in the context of *a sale or distribution.* The General Assembly's use of the term "counterfeit" emphasizes that only the *deceptive* use of a word or mark is

(2) Intellectual property affixed to any item knowingly sold, offered for sale, manufactured or distributed or identifying services offered or rendered, without the authority of the owner of the intellectual property.

18 Pa.C.S. § 4119(i). The term "intellectual property" is defined as "[a]ny trademark, service mark, trade name, label, term, device, design or word adopted or used by a person to identify that person's goods or services." *Id.*

prohibited. Moreover, there would be no reason for a presumption of an "intent to sell or distribute" in the instance of possession of 25 items if an intent to sell or distribute was not required for a violation of the Statute. When the Statute's sections are read comprehensively it becomes clear that both deception and a sale or distribution are required in order to violate the Statute.

Although appellate review of the Statute has been scant,[7] the Superior Court has recognized the legislative intent that the Statute only be applied in the context of a sale or distribution. In *Commonwealth v. George*, 878 A.2d 881, 883–86 (Pa.Super.2005), the Superior Court evaluated the Statute in the context of a sufficiency of the evidence challenge where the defendant was arrested displaying counterfeit videotapes on a public street. The defendant argued that the Statute did not apply because Section 4119(b) states that intent to sell may be inferred where a defendant possesses 25 counterfeit items, and the defendant argued that he possessed just 10 counterfeit videotapes at the time of his arrest. *Id.* at 885. In rejecting the defendant's argument, the Superior Court reasoned that although intent to sell could be inferred where a defendant possessed more than 25 items, so long as the Commonwealth could demonstrate an intent to sell, the possession of fewer items was also illegal. *Id.* In so holding, the Superior Court implicitly ruled that the legislative intent of the Statute was for the Statute to apply only where trademark counterfeiting is done in the context of a sale or distribution.

Similarly, the Statute applies only in circumstances arising from *counterfeiting*. The Statute does not apply outside of this context, regardless of whether a recognized word or mark is used. The intent of the Statute is not to criminalize the mere use of a recognized word or phrase. To the contrary,

7. *See Commonwealth v. Crespo*, 884 A.2d 960, 964–66 (Pa. Commw.2005) (discussing the seizure of counterfeit items in the case where a defendant has been accused of a violation of the Statute); *Commonwealth v. Sow*, 860 A.2d 154, 154–55 (Pa.Super.2004) (holding that the Statute is not preempted by federal law).

the intent of the Statute is to prevent individuals from deceptively utilizing a recognized mark in the context of a sale or distribution.

Section 4119(a) of the Statute sets forth the requirements for a violation of the Statute. Pursuant to Section 4119(a), "[a]ny person who knowingly manufactures, uses, displays, advertises, distributes, offers for sale, sells or possesses *with intent to sell or distribute any items or services bearing or identified by a counterfeit mark* shall be guilty of the crime of trademark counterfeiting." 18 Pa.C.S. § 4119(a) (emphasis added). Although the grammar of the Statute could be more precise, pursuant to Section 4119(a) of the Statute, use of a counterfeit mark is criminal only where a person intends to sell or distribute an item or service bearing that mark. Although the Statute mentions the use of a counterfeit mark, mere use of that mark is not sufficient to violate the statute. To violate the Statute, a person must use the mark and intend to sell or distribute items bearing that deceptive mark. The clause "with intent to sell or distribute" modifies all of the language preceding it.

Had the drafters inserted the clause "with intent to sell or distribute" earlier in the sentence, there could be no dispute that they intended only to prohibit deceptive use of a mark in the context of a sale or distribution. The following language would have been clearer and less ambiguous: "any person who, *with intent to sell or distribute any items or services,* knowingly manufactures, uses, displays, advertises, distributes, offers for sale, sells or possesses any items or services bearing or identified by a counterfeit mark shall be guilty of the crime of trademark counterfeiting." The drafters apparently selected an awkward location for the clause "with intent to sell or distribute," but that poor choice should not invalidate the entire Statute.

The major distinction between the majority's interpretation of the Statute and my own interpretation revolves around whether *all* use of protected terms or words is prohibited, or

whether only the use of terms and words *in the context of sale or distribution* is prohibited. The majority interprets the statute only to prohibit the use of terms and words in the context of sale or distribution. The majority concedes that if the phrase *"with intent to sell or distribute"* is read to apply to the entire list of verbs in the definition of the offense in subsection(a), then the Statute properly limits its reach to unprotected activity. Majority Op. at 608, 981 A.2d at 187.

The question then becomes whether the phrase "with intent to sell or distribute" modifies only the immediate words "sells or possesses" that precede the phrase, or whether the phrase modifies all the language of this sentence of the Statute. In other words, is it illegal to manufacture, use, display, advertise, distribute, or offer for sale an item bearing a protected mark—or is it illegal to manufacture, use, display, advertise, distribute, or offer for sale an item bearing a protected mark only where that item is *intended to be sold or distributed?* The General Assembly could have drafted the Statute in a manner that would concretely resolve this question. The majority, rigid in their application of grammar rules to the detriment of realistic interpretation, holds that the phrase "with intent to sell or distribute" modifies only the immediate words "sells or possesses."

The fact that it is unclear whether the phrase "with intent to sell or distribute" modifies only the immediate words "sells or possesses" or modifies all the verbs in the sentence demonstrates ambiguity in the Statute. The majority's limiting interpretation, while perhaps consistent with strict grammar rules, is inappropriate here where the Statute is ambiguous and the legislative intent is clear. Other requirements in the sentence, which clearly apply to all the enumerated verbs, are not set off clearly. For example, does the term "knowingly" modify only the word "manufactures" which immediately follows? If an end-user carries a counterfeit purse but has no knowledge that the purse is counterfeit, under the majority's strict application of grammar rules, that user is subject to

arrest because the term "knowingly" may only modify the verb "manufactures." Plainly the legislature had no such intention. It is illegal to knowingly manufacture a counterfeit item, but certainly the other prohibited actions are also illegal only if done knowingly.

In my opinion, the Statute is ambiguous and common sense must be utilized in concert with a grammatical interpretation and the legislature's intent in order to arrive at the Statute's meaning. This common sense approach is crucial here where the alternative is to strike down a criminal statute unnecessarily. The Statute, while hardly a model of clarity, is neither unconstitutionally vague nor overbroad. Persons of ordinary intelligence need not guess at the meaning or application of the Statute. Nor does the Statute fail to describe a violation with sufficient definiteness. Simply stated, pursuant to the Statute it is criminal to make deceptive use of a recognized word or mark for the purpose of a sale or distribution. When the Statute is read in the context of the General Assembly's clear legislative intent, as evidenced by the presumption of intent to distribute or sell set forth in Section 4119(b), it is clear that mere use of a mark is not criminalized. The grammar of the Statute, while somewhat unconventionally structured, nevertheless defines a violation sufficiently to pass void-for-vagueness and overbreadth review and it is not necessary to strike down the Statute.

Respectfully, we should be mindful that our role is to determine whether there exists any constitutional interpretation of the Statute when read in context of the legislative intent. Here, the Commonwealth offers a reading of the Statute that renders the Statute sufficiently well-drafted so as to be constitutional. The majority declines to adopt this reading and offers no different constitutional interpretation. I do not believe we should decline a constitutional reading of the statute where one is possible. Any doubts as to the constitutionality of the Statute are to be resolved in favor of finding that it is constitutional.

Here, the General Assembly could have chosen more precise language equally capable of prohibiting trademark infringement. But that is not the inquiry before this Court. *See Powell*, 423 U.S. at 94, 96 S.Ct. 316. This Court should not declare the Statute to be unconstitutional because it could have been more artfully drafted. In my opinion, the majority erodes the standard for determining whether a statute is unconstitutional. The erosion is particularly inappropriate in the instant case, where it is clear that Appellees' conduct was illegal and prohibited under any reasonable interpretation of the Statute.[8] Appellee Omar transported counterfeit Nike sneakers across state lines for resale. Appellee O'Connor was arrested selling counterfeit Penn State hats in a parking lot outside Beaver Stadium. Clearly, the conduct of these Appellees was a violation of Nike and Penn State's trademarks, and Appellees' behavior was illegal. That Appellees should have their convictions overturned due to overbreadth of the Statute, under the guise of invoking the protections of the First Amendment, has an aura of injustice.

Even more problematic is the precedent set by the majority opinion. Now that mere inarticulateness or poor grammar is the standard for declaring a statute unconstitutional, scores of serious criminal statutes may have to be declared unconstitutional. The opinion invites any defendant charged under a criminal statute to challenge the statute's constitutionality and suggests that such a challenge may be successful based upon the General Assembly's poor word placement. I believe this creates unwise precedent and, while I agree with the majority that the Statute is inartfully drafted, I cannot conclude that it is so poorly drafted as to overcome the significant burden of proof required to demonstrate unconstitutionality. Based on the foregoing, I respectfully dissent from the majority and would hold that the Statute is constitutional.

8. Had we been presented with a question of constitutionality *as applied*, i.e. as in the examples set forth by the majority and the trial court, the result *for that litigant* may have been different. Such a finding would not impinge the Statute's viability.